SARAH DUVALL *vs.* THE FARMERS BANK OF MARYLAND. *June,* 1832.

When the aid of a court of equity is necessary, to enable the husband to obtain possession of the wife's personal property, he must do what is equitable, by making a suitable provision out of it, for her maintenance, and that of her children.

The wife's equity exists, although there has been an assignment for a valuable consideration; and the assignee, standing in the place of the husband, and seeking to withdraw the funds, will be compelled to make the provision.

In *England*, this principle is founded upon the rule, that the husband, seeking the intervention of a court of equity to gain possession of his wife's estate, must do equity.

It is immaterial, whether the wife asserts her claim to this equity, in opposition to the complainant in an original bill, or by petition, after an order of the court distributing a fund in court, which has not been paid over. In the latter case, it will be considered, as substantially an exception to the auditor's report, distributing the fund out of which she claims payment. Under the order *nisi,* usually passed upon petitions against funds in court, the rights of all the parties interested, will be examined and determined.

The character and extent of the provision for the wife, would seem in every case to be governed by its peculiar circumstances, and be regulated by the whole amount of the wife's fortune, and what the husband had previously received.

APPEAL from the Court of Chancery.

A portion of the personal estate of a certain *Benjamin Harwood,* who died sometime in January, or February, 1826, being in the Court of Chancery for distribution; a petition was filed by the appellant on the 24th July, 1830, as one of the representatives of the said *Benjamin,* setting forth, that her husband, *Lewis Duvall,* who departed this life in November, 1829, in his life-time, executed certain assignments of her share of said personal estate, to one *Jonathan Pinkney,* cashier of the *Farmers Bank of Maryland,* without her knowledge or consent. That the petitioner had never known until this day, that said fund was in a course of distribution in this court, or that any persons claiming to be the assignees of her share were receiving the same, under its sanction. That on the 22d July, 1830, a further dividend of said estate was made, and reported by the auditor, of which until this day she had no knowledge, and she prayed leave to except to the same, as well as to all preceding reports in the cause, in any way affecting her rights, or share in said estate, and that the administrators of the said *Benjamin Harwood,* deceased, be directed not to pay over any part of said estate, to any assignee of the husband of this petitioner; and that the president, &c. of the said *Farmers Bank,* be directed to bring into court, such dividends as they may have received on the said estate, and that the same, together with all future dividends, be paid to her. The petition further states, that the assignment in virtue of which the bank claims, and which bears date 10th July, 1827, was obtained from her husband when he was not of sane mind for the transaction of business; he having previously been reduced to a state of mental imbecility, which incapacitated him for the manage-

ment of his affairs, by a paralysis, which she believes was known, at the time to the bank. That prior to this assignment, to wit, in August, 1826, when her said husband had no right to transfer her interest in said estate at all, he had assigned the same to the said bank, and she alleges that the assignment of 10th July, 1827, was merely substituted for that of August, 1826, and so in truth, and in fact, the whole proceedings of the bank, were in fraud of this petitioner, for the purpose of obtaining further security for old debts, due at that time from her said husband. That no part of said estate, ever in fact came to his hands, but the whole transaction was a mere shifting of accounts upon the books of the bank; and that her entire disributive share, is still an equitable *chose in action* in this court, which has survived to her.. She therefore, charges said assignment to be void for want of consideration, and fraudulent, and void, as having been obt ined from a man utterly *non compos mentis* for such a purpose. The petition then alleges, that if she be not entitled to the entire share of said estate, already distributed, and remaining to be distributed, that at all events, she is entitled as survivor, to the dividend declared on the 22d July, 1830, which she prays may be paid to her, instead of the aforesaid assignees, or that a suitable provision out of said share be made for her, and for such other relief as can be afforded her upon this petition.

Copies of the assignments referred to, marked exhibits **A** and **B**, were filed with-the petition.

The *first*, which bears date in August, 1826, recites, that the assignor (*Lewis Duvall,*) is indebted to the *Farmers Bank of Maryland,* in the sum of ten thousand dollars, upon two promissory notes, dated on the 10th of March, 1824, "towards the payment of which, he assigned, transferred, and made over to *Jonathan Pinkney,* cashier of said bank, his the assignors wife's interest in the estate of the late *Benjamin Harwood,* (except her proportion of stock in the *Bank of Columbia,*) and he thereby directed the admin-

istrators of the said *Benjamin Harwood,* to pay the same to the said *Pinkney,* to be applied as aforesaid."

The *second,* dated July 10th, 1827, recites the indebtedness of the assignor, in the sum mentioned in the previous assignment, his further indebtedness in the sum of $7,857 upon a note, endorsed by a certain *Richard Duvall,* and *Grafton B. Duvall,* dated 9th May, 1827, at sixty days; upon another note, drawn and endorsed, as aforesaid, for $300, at ninety days from the 1st June, 1827. Upon a *third,* similarly drawn, and endorsed, at sixty days from 20th June, 1827, the sum of $750, and several large sums for interest and discounts. The assignment then proceeds; " Towards the payment of said claims as aforesaid, in the order hereinafter to be stated; I do hereby assign, transfer and make over, unto *Jonathan Pinkney,* and for the use of the president, directors, and company of the *Farmers Bank of Maryland,* all my wife's interest in the personal estate of the late *Benjamin Harwood,* (except her proportion of the stock in the *Bank of Columbia,*) and I do hereby direct the administrators of the said *Benjamin Harwood,* to pay the dividends now due, and as they become due, to which my wife is entitled as aforesaid, to the said *Jonathan Pinkney,* for the use aforesaid, and the money when received, to be applied in the first place to pay off the money which I now owe as aforesaid, or at any time when a dividend is received, may owe for discounts, or interest to said *Farmers Bank;* in the second place to discharge the note aforesaid, for $1000; to pay the three notes as aforesaid, drawn by me, and endorsed by *Richard* and *Grafton B. Duvall,* and the residue to the discharge as far as it will go, of the note of $9000, before mentioned."

The *answer* of the bank, admitted the petitioner to be one of the representatives of the deceased, *Benjamin Harwood,* and the death of her husband, *Lewis Duvall,* as stated by her. It was also admitted, that exhibits A and B, were true copies of the assignments executed by *Lewis Duvall,* in his life-time to the bank. The answer then stated, that no-

tice of said assignments was given to the administrators of *Benjamin Harwood*, who in compliance therewith paid the assignees $4,204 93 on the 28th July, 1827; the further sum of $697 33, on the 19th November, 1827; and the further sum of $1038 65, on the 13th November, 1828. That the assignments were executed for a full and valuable consideration, and that the moneys received have been applied as directed by that of the 10th of July, 1827. That a considerable balance is yet due of the debts therein mentioned, which they believe the entire interest of the petitioner, in the deceased's estate will be inadequate to discharge.

They do not admit that the petitioner was ignorant of said assignments. They allege that the last of the 10th July, 1827, was executed at the request of *Lewis Duvall*, who was desirous after paying the one thousand dollar note, and certain interest and discounts, to provide for the two notes, endorsed by *Richard* and *Grafton B. Duvall*, and for that purpose, the bank agreeing thereto, the same was executed. The answer denies, that *Duvall* was incapable of managing his affairs when the assignments, or either of them was executed, and it suggests, that as the last was executed for the indemnity of the endorsers, *Richard* and *Grafton B. Duvall*, they ought to be made parties. The answer further states, that after the execution of the aforesaid assignments, the administrators of *Benjamin Harwood* assumed to pay the bank, the amount of the interest of the petitioner, and that therefore, they are not compelled to resort to a court of equity for the fund, which the defendant alleges, is a sufficient answer to the claim in right of survivorship, to receive the unpaid dividends; or for an equitable provision out of the same.

From the reports and statements of the auditor among the proceedings, and the chancellor's orders thereupon, it appeared that the dividends, paid to the bank in the life-time of the petitioner's husband, amounted to between five and six thousand dollars.

On the 22d July, 1830, and after the death of the petitioner's husband, a further dividend was reported, as due the bank under said assignment, amounting to $1416 29, which report, *Bland,* chancellor, ratified on the 23d, and ordered the money to be paid by the administrators accordingly; but afterwards on the 24th, on the preceding petition, he ordered that the administrators retain the same in their hands until further order, provided a copy of the order and petition should be served on them, and on the bank, before the payment over to it, of the said share.

Afterwards on the 2d December, 1830, the chancellor after argument, ordered that the order of the 24th July, be rescinded and annulled, and the petition dismissed with costs.

From this order the petitioner appealed to this court.

The cause was argued before MARTIN, ARCHER, and DORSEY, J.

*Flusser,* for the appellant, contended.

1. That appellant is entitled to a provision out of the entire fund, assigned by her husband to the *Farmers Bank of Maryland.* 2. That she is entitled to the whole of the last dividend of said fund. 3. That she is entitled to a provision out of such dividend.

1. Admitting the assignment to have been made for value, the wife is entitled to a provision, the fund being in chancery, and she could not release her title without a private examination by the chancellor. *Lady Elibank vs. Montolieu,* 5 *Ves. Jr.* 738. *Murray vs. Lord Elibank,* 10 *Ib.* 90. 3 *Atk.* 721. *Howard vs. Moffatt,* 2 *Johns. Ch. Rep.* 206. *Kenny vs. Udall,* 5 *Johns. Ch. Rep.* 464. *Glenn vs. Fisher,* 6 *Ib.* 33. *Haviland vs. Myers, Ib.* 25. 2 *Kent. Com.* 115. Upon the 2d point, he referred to *Wright vs. Morlay,* 11 *Ves. Jr.* 16. *Burnett vs. Kinnaston,* 2 *Ver.* 401. *White vs. St. Barbe,* 1 *V. and B.* 405. *Hornsby vs. Lee, et al.* 2 *Madd. Ch Rep.* 349. *Purdew vs. Jackson,* 1 *Russell Ch.*

Rep. 42. The circumstance of the wife having been a party to the proceeding by which the fund was brought into court, does not vary the rule.     Carr vs. Taylor, 10 Ves. 580.   Schuyler vs. Hoyle, 5 Johns. Ch. Rep. 197. The State vs. Krebs, 6 Harr. and Johns. 36.

Magruder, and Alexander, for the appellee.

1. A wife is not in England entitled to a provision out of a fund in chancery, as againt the assignee of her husband, which the husband, the assignor, derived from her.   3 Peter's Cond. Ch. Rep. 305.   Mitford vs. Mitford, 9 Ves. 100. The assignee stands in a better condition than the assignor, if it were not so, then upon the death of the husband, surviving the wife, she would be entitled to the whole by survivorship, which is not pretended.   In the present case, the husband, at the date of the assignment, had the right to reduce the fund into possession, and the assignment operates as an agreement to reduce.   The assignees did not go into chancery asking the aid of that court, but they were brought in. They argued that it was contrary to the practice of the Court of Chancery of Maryland, to allow a provision to the wife, under such circumstances as existed in this case; and as widows here, are placed upon more favorable grounds than in England, it would not be proper to adopt the practice of the courts there, if the rule be, as contended for on the other side. Coomes vs. Clements, 4 Harr. and Johns. 482.   Adams vs. Pierce, 3 Piere Wm's. 11. 2. The application of the wife was too late, the court having by its order of 23d July, 1830, parted with the fund, and from that order, if erroneous, the appeal is not to be taken.   Howard vs. Moffatt, 2 Johns. 209.   After the various reports of the auditor, and their ratification by the court, with directions that the money should be paid over by the administrators, in conformity therewith, they insisted the chancellor had no authority to interfere with the fund, which by those proceedings had passed from his jurisdiction.   They further insisted, that the prayer of the petition was not warranted by the facts

stated in it. *Coop. Eq.* 96. *Mitf.* 74. And that *Richard* and *Grafton B. Duvall*, should have been made parties. *Coop. Eq.* 34. On the 2d *point* they cited, 2 *Kent. Com.* 113. *Honner vs. Morton*, 3 *Peters' Cond. Rep.* 298, 301. *Johnson vs. Johnson*, 1 *Jacob and Walker*, 456.

*Johnson*, in reply.

1. The fund being in court, and placed there at the instance of the distributees, the proper mode of asking relief was by petition, and the distributees alone were necessary parties; and as they were in court, it was not necessary to ask for process against them. *Cromwell vs. Maccubbin*, *et al*, 2 *Harr. and Gill*, 443. The endorsers, *Richard*, and *Grafton B. Duvall*, not having been parties to the original proceeding, should not have been made parties to the present petition, as no order upon it, could be binding upon them. They had no agency in procuring the assignment, and nothing more is presented, than the ordinary case, of an assignment by a debtor to his creditor, who is only required to use due diligence to render it available. The right of the wife to an equitable provision out of her estate, exists both against the husband and his assignee for value, whatever may be the effect of such assignment on the right by survivorship. *Roper on Property*, 266. *Jeremy*, 201. *Schuyler vs. Hoyle*, 5 *Johns. Ch. R.* 208. *Kenny vs. Udall*, *Ib.* 477. *Haviland vs. Myers*, 6 *Ib.* 25. *Udall vs. Kenny*, 3 *Cowen* 590. And chancery will always make this provision, when in possession of the fund, though the husband might have recovered it by an action at law. 2 *Kent. Com.* 118. *Udall vs. Kenny*, 3 *Cowen*, 590. The doctrine of allowing the wife a provision out of her estate, does not depend upon the relative favor shown married women, by the laws of *England*, or of this country. *Adams vs. Pierce*, 3 *Pier. Wm's.* 11. An application for such an allowance may be made by the wife, though the husband may not have asked the aid of the court to put him in possession of her estate. 2 *Kent. Com.* 118. *Johnson vs. Johnson*, 1 *Jacob and Walk.* 451. Though an assignment for value, may destroy the

wife's survivorship, so far as relates to the debt intended to be secured, it does not destroy it as regards the balance, if there be a balance after paying such debt, and therefore the petition should not have been dismissed. Now there is nothing in this case to show, that there would not have remained a residue after paying the debt to the bank, and the bill should have been retained for the purpose of ascertaining that fact. *2 Atk.* 206. *3 Russel,* 65. Upon the subject of the proper amount to be allowed, he referred to *Kenny vs. Udall,* 5 *Johns. C. R.* 479, 480. *Haviland vs. Bloom,* 6 *Ib.* 178.

ARCHER, J., delivered the opinion of the court.

The funds which in this cause, furnish the subject matter of contest, consisted of the personal estate of *Benjamin Harwood,* of whom the appellant, the widow of *Lewis Duvall,* was one of the representatives, and as such entitled to a distributive share. The appellant claims the fund yet remaining in court, by survivorship, or that a wife's equity may be decreed to her out of the fund.

The rule in equity appears to be, that where the aid of a court of equity is necessary to enable the husband to obtain possession of the wife's personal property, he must do what is equitable, by making a suitable provision out of it, for her maintenance and that of her children. This principle which regulates the Court of Chancery of *England,* is founded on those principles of natural justice and equity, which would seem to make it of universal application. For what could be more equitable than that a suitable provision should be secured to the wife and children, out of *her* choses in action, and what could be more inequitable than to permit the husband to take her whole estate, without allowing to her, out of her own funds, a suitable maintenance? Accordingly, the doctrine of the *English* Court of Chancery upon this subject, appears to have been adopted to the full extent in *New York. Howard vs. Moffatt,* 2 *Johns. Ch. R.* 207. *Schuyler vs. Hoyle,* 5 *Johns. Ib.* 207. *Kenny vs. Udall, Ib.* 464. *Glenn vs. Fisher,* 6 *Johns. Ib.* 33. *Haviland vs. Myers, Ib.* 25. 2 *Kent. Com.* 116.

That the laws of this State secure to the wife, one-third of the personal estate of the husband after his death, and after the payment of his debts, against the husband's alienation by last will and testament, cannot deprive her of this equity. In *England* it is not founded, as has been supposed in argument, upon the power of the husband to bequeath to others than his wife, his whole personal property, but upon the principle, that the husband seeking the intervention of a court of equity to gain possession of his wife's estate, must do equity. The wife's equity was by the practice of the *English* Chancery allowed her, at a period, when according to the decision of our own courts, in *Griffith vs. Griffith,* 4 *Harr. and McHen.* 101, *and Coomes vs. Clements,* 4 *Harr. and Johns,* 480, the common law of *England* forbade the husband to alienate the whole of his estate, as against her, and secured to her, as does ours, a third part of his personal estate after the payment of his debts. *Lord Hardwicke,* in *Jewson vs. Moulson* says, that in the 14th year of the reign of *Chas.* I. *Lord Keeper Coventry,* took notice of the rule, establishing the wife's equity, as existing at that day; at which period of time, according to *Sir Wm. Blackstone,* it was declared by *Sir Henry Finch,* that the husband had no power to devise away the whole of his property from the wife. That this was the common law of *England,* at that day, has been decided by the courts of this State. This equitable provision could not therefore have been founded, on any supposed power of the husband over the whole of his personal estate, but has been found to exist in *England,* under all the modifications which have existed in the rights, and powers of the husband over his property. It is true that this allowance to the wife, is the creature of the *English* Court of Chancery, and is considered as a part of its practice. But it is a wise provision growing out of salutary maxims governing courts of equity; and deserves to be considered, rather as a principle governing and controlling the court, in its dispensation of equitable jurisprudence, than as being merely practical in its

character.    We are not aware that a different practice has existed in the equity courts of this State.    It is possible that but a few applications of this kind have been made, and if this were the first case, it would be proper to apply to it a long and well established rule.

The wife's equity exists, although there has been an assignment for a valuable consideration, and the assignee standing in the place of the husband, and seeking to withdraw the funds, will be compelled to make the provision.    He takes the assignment subject to the wife's equity, for he takes it with the knowledge, that it is property derived from her, and knows at the time of the assignment, or is bound to know, all the equity to which it is subject.    It is an equity which attaches itself to the fund, and follows it in the hands of the assignee, whether with, or without a valuable consideration, or whether the assignment passes by the act of the party, or by operation of law.  *Howard vs. Moffatt,* 2 *Johns. Ch. Rep.* 206.  1 *Eden,* 307, 371.  2 *Atk.* 420.  *Wright vs. Morlay,* 11 *Ves.* 17.  1 *Mad. Ch.* 362.    It has been supposed, that as a purchaser for a valuable consideration was looked upon by a court of equity with a favorable eye, that the provision for a wife, ought not to be enforced against such an assignee.  *Wright vs. Morlay,* 11 *Ves.* 17.    But the doctrine as above stated, notwithstanding this doubt, appears to be settled by a numerous succession of authorities.  2 *Atk.* 417.  *Pryor vs. Hill,* 4 *Bro. Ch. C.* 138.  *Pope vs. Crashaw,* 4 *Bro. Ch. C.* 326.  *Lake vs. Beresford,* 3 *Ves.* 506.  4 *Ib.* 19.  *Wright vs. Morlay,* 11 *Ves.* 17.  *Wall vs. Bright,* 1 *Jacob and Walk.* 477.  *Purdew vs. Jackson,* 1 *Russel,* 53.    And in this country, the same judgment has been pronounced in several cases determined by chancellor *Kent,* in which all the authorities underwent an able and learned investigation.  *Kenny vs. Udall,* 5 *Johns. Ch. R.* 318.  *Haviland vs. Bloom,* 6 *Ib.* 178.

That there exists matter in the petition which would properly form the subject of an original bill, cannot, we think, furnish any serious obstacle to the appellant.    It is sufficient

that a portion of what she seeks, is demandable in the form of a petition. Now, if the fund in court, which is sought to be drawn out by the assignee, is liable to the appellant's equity, *the prayer that a suitable provision be made out of her share*, is properly cognizable by the court in this form; and the application of the appellant, that the administrators of *Benjamin Harwood* should not be permitted to pay over to the *Farmers Bank*, the funds in their hands for distribution, according to the order of 23d July, 1830, and that out of said funds, this provision should be assigned, made at the same term at which the order was passed, and before the money was paid over, brought properly before the chancellor, the whole subject matter of the order referred to, for his revision and review. It could not be necessary that a *subpœna* should be prayed against the parties. This was repudiated in the case of *McCubbin vs. Cromwell.* An order *nisi*, such as was passed in this case, was all that was necessary, and was according to the accustomed practice of the Chancery Court.

The parties interested in the fund were all in court. The administrators were parties to the suit, and the assignees were in court, seeking to draw from it, the funds in controversy. Nor could it be necessary in any possible view, which we can take of the case, to make *Richard and Grafton B. Duvall*, the endorsers of the assignor's note to the *Farmers Bank*, (and for the payment of which note the assignment was in part made,) parties. It is true, if ultimately available, it would have benefitted them, yet if the funds which are still in court, and have not yet been applied to the credit of the note, should be abstracted from its extinguishment, by a decree of the chancellor, it is perfectly clear, under such circumstances, that in any suit against the endorsers, the chancellor's decree would be a complete bar, to their claiming any credit on the note on account of the assignment, either at law or in equity, or setting up the same, against the right of recovery. The decree would not be liable to the objection of *res inter alios*

*acta.* So that a complete decree could pass without the appearance of the endorsers as parties.

It has been urged against the appellant, that having failed to file exceptions to the auditor's report, the application should have been to the chancellor to open the audit, so that she might have had an opportunity of filing her exceptions to the distribution. But we apprehend, that no formal order of the chancellor was necessary for opening the account, and granting leave to the appellant to file exceptions. The auditor made his report on the 22d of July; on the 23d, the order passes for a distribution, and the next day, and before the money is paid over, the appellant expresses her dissatisfaction with the distribution of the fund, and prays the chancellor, that a provision out of these funds may be made for her. This bringing as it does, the whole subject matter of the order of the 23d July, before the court, contains in substance and effect, an objection to the report upon which the order was founded; and the court in reviewing its own order, was thus necessarily called upon by the shape which the petition assumed, to re-examine the auditor's report, in as effectual a manner, as he could have been called to do, had he passed a formal order for re-opening the account.

The wife's right of survivorship, it perhaps is not necessary critically to examine. For it has not been alleged as at all probable, that any future dividends of this estate, would extinguish the claims of the *Farmers Bank,* according to the terms of the assignment, after the wife's equitable provision shall be abstracted therefrom; and because any claim to survivorship which she might have, would always be subject to the payment of the equitable assignee. The character and extent of the provision for the wife, would seem in every case, to be governed by its peculiar circumstances, and to be regulated by the whole of the wife's fortune, and what the husband had previously received. We have no other lights furnished us by the record upon this subject, than is contained in the auditor's reports, and when

we consider the sums heretofore paid over of her fortune, to the assignees, we conceive the sum in the hands of the administrators according to the last report of the auditor, and which was distributed by the order of the 23d July, 1830, but a very inadequate provision. This we shall assign her for her maintenance, and that of her children, if she have any, with such further sum as the chancellor shall conceive proper, should more funds be brought into court for distribution.

The order therefore of the chancellor, of the 2d day of December, in the year 1830, so far as it dismisses the appellant's petition, is reversed, and this court proceeding to decree as the chancellor should have done, will pass an order directing the proceeds, at the date of the said order, in the hands of the administrators, to be paid over to the appellant, on account of her provision for her maintenance, and that of her children, if she have any.

**DECREE REVERSED.**