JONATHAN McVEY AND WIFE,
vs.                                    } MARCH TERM, 1852.
WILLIAM BOGGS AND OTHERS.

[WIFE'S EQUITY TO HER PERSONAL ESTATE.]

WHERE the aid of a Court of Equity is necessary to enable the husband to obtain possession of the wife's personal estate, he must do what is 'equitable, by making a suitable provision out of it for her maintenance and that of her children.

This principle applies to the assignee, for value, of the husband, to the case of transfers by operation of law, or by the act of the husband, to general assignees for the benefit of creditors.

The amount of the provision to be made to the wife in every case must be governed by its peculiar circumstances, and, according to those circumstances, the Court may give to her the whole or only a part of the property.

In this case, the husband, though living with the wife, was bankrupt; they were destitute, having no property, except the wife's share of the proceeds in this cause, amounting to $919 06, and had a large number of children, most of them very young and helpless, to support. The Chancellor decreed the *whole* sum to be settled upon the wife.

[The real estate of Thomas Taylor, deceased, was sold, under the decree in this case, for the purpose of distribution among his children, his heirs at law, one of whom was Frances McVey, the wife of Jonathan McVey. After the statement of the account by the Auditor, awarding the sum of $919 06, of the proceeds of the sale, to the said Jonathan, in right of his wife; the latter, by a next friend, filed her petition, alleging that she was poor, and has six children, the most of whom are very

young and helpless; that her husband is destitute of property, and has actually applied for the benefit of the insolvent laws; that she has no means of support; and praying that her proportion of the proceeds of sale may be invested for her support, and the support of her children.

The Messrs. Boggs also filed their petition, claiming the said proceeds of sale should be paid over to them as judgment creditors of Jonathan McVey, upon a judgment recovered by them in Harford County Court, in November, 1844, upon which *fi. fas.* had been issued and returned *nulla bona.*

The real estate was sold on the 8th of September, 1849, and the sale finally ratified on the 10th of February, 1851. Jonathan McVey petitioned for the benefit of the insolvent laws on the 16th of May, 1849, and it was admitted that he and his wife have no property, and that they have a large number of children, and that Mrs. McVey is dependent chiefly upon the personal exertion of herself and husband for the support of herself and children, that is, that they have no property except their share of the proceeds of the sale in this case.

Both these petitions were set down for hearing, and being heard, the Chancellor delivered the following opinion.]

THE CHANCELLOR:

The case of *Duvall* vs. *The Farmers' Bank of Maryland,* 4 *G. & J.,* 282, has established the principle, long before recognized and acted upon in England, and in several of the States of this Union, that where the aid of a Court of Equity is necessary to enable the husband to obtain possession of the wife's personal estate, he must do what is equitable by making a suitable provision out of it for her maintenance, and the maintenance of her children. And the principle prevails, though there has been an assignment by the husband for a valuable consideration, and the assignee, standing in the place of the husband, and seeking to withdraw the funds from the Court, will be compelled to make the provision.

This allowance to the wife, though the creature of the Eng-

lish Court of Chancery, and regarded as a part of its practice, is placed by the Court of Appeals upon the higher ground of principle, governing and controlling the Court in its dispensation of equitable jurisprudence, from which it is not at liberty to deviate when the circumstances exist which require its application. And as this equity of the wife is binding even against an assignee for value, it, of course, applies with more controlling force to the case of transfers by operation of law, or by the act of the husband, to general assignees, for the benefit of creditors. The case of *Kinny* vs. *Udall*, 5 *John's Ch. Rep.*, 464, and several other cases decided in New York, all of which are cited with approbation by the Court in *Duvall* vs. *The Bank*, maintain this doctrine, and they likewise maintain, that the amount of the provision to be made for the wife in every case must be governed by its peculiar circumstances, and that according to those circumstances the Court may give to her the *whole* or only a part of the property.

In the case of *Kinny* vs. *Udall*, the authorities are collected and examined, and it is clearly shown that the Court " has a discretion in such cases to give a whole or a part to the wife." The Chancellor, in concluding his review of the cases, asks, emphatically, " Why may not the Court give the wife the whole, in every case, if the justice of it and her condition require it ?" The doctrine, he affirms, depends upon the particular practice of the Court, and not on general reasoning, and he concludes that the practice has not been sufficiently fixed and uniform to form a determinate rule, controlling the exercise of the discretion of the Court in the particular case. The question, in every case, being, what is a suitable and adequate provision for the wife under the circumstances ?

There is nothing, as I conceive, in the case of *Duvall and The Farmers Bank*, which, justly regarded, will be found to conflict with the rule established in New York, or in England, or to limit or fetter the discretion of the Court upon this subject. The object of the Court of Chancery in establishing this equity is to provide out of the wife's property for her maintenance and the maintenance of her children ; and if, to accomplish this purpose,

it is necessary to give her the whole, the Court will give her the whole, regarding that object as paramount to the claims of her husband, or the assignees of her husband, whether voluntary or for value. The case of *Kinny* vs. *Udall* was carried to the Court of Errors of New York, and will be found reported in 3 *Cowen*, 590. It underwent a most elaborate discussion at the bar and from the bench, and after an examination of all the authorities, Chief Justice Savage, who delivered the opinion of a large majority of the Court, said, " That as to the amount of a wife's estate which shall be secured to her, that is a fit subject of reference to the master, and must necessarily be determined by the circumstances of each particular case;"—" the rule is, that an adequate provision be made for the wife and the children, if there be any."—" What shall be considered adequate must depend entirely on circumstances."—" In some cases, the whole has been allowed the wife."—" In one case an annuity of £40 per annum;"—" in another, the interest of £800."—" In other cases, the half has been assigned," &c. And it will be found, upon looking at many of the cases, in which the whole of the property of the wife has been assigned her, for the support of herself and children, it has not been because she has been abandoned by her husband, and left entirely to her own unaided labor for her support. Several of them were cases like that now under consideration, in which the husband, though he had become bankrupt, was living with his wife, and yet the whole of her property was allowed her, in opposition to the claim of the assignees of the husband. In the very last case which I have seen reported in the English Chancery, *In re Cutler's Trust*, 6 *Eng. Law and Equity Rep.* 97, the whole fund was given to the wife, in opposition to the claim of the assignee of the insolvent husband, though there was no statement that the husband had deserted his wife, or did not, by his labor, contribute to her support.

Assuming, then, that the Court, in cases of this description, may exercise a discretion, and, according to the circumstances, give the whole or a part to the wife, it would not be very easy to imagine circumstances in which the claim of the wife to have

all settled upon her could be stronger than those which exist here.   Jonathan McVey took the benefit of the insolvent laws in May, 1849, and it is admitted that he and his wife are destitute, having no property, except their share of the proceeds in this case, and have a large number of children to support, being dependent chiefly upon the personal exertion of herself and husband.   The children, most of them, are very young and helpless, incapable of aiding, to any extent, the exertions of their parents to support them.   The proportion of the proceeds of the property, sold under the decree in this case, assigned, by the report of the auditor, to McVey and wife, amounts to $919 06.   The property was the real estate of the wife, and all that devolved upon the trustee of the insolvent husband was his initiate curtesy interest as it stood when he petitioned for the benefit of the insolvent laws, which was before the date of the decree for the sale.

Seeing, then, that the principle now so firmly fixed in our equitable jurisprudence, and which commends itself so strongly to favor, is to provide out of the estate of the wife, when it is under the control of this Court, or when its aid is necessary to enable the husband or his assignees to obtain possession of it, an adequate maintenance for the wife and children, and looking to the circumstances of this case, the destitute condition of the wife, and the number and helpless ages of the children, I am of opinion that the whole amount of her interest in the proceeds of sale in this case should be settled upon her, and shall so decree.   I am not, however, disposed to subject the petitioners, the Messrs. Boggs, to the costs.

The counsel for Frances McVey may prepare a decree, directing the fund in question to be invested by a trustee in some safe and productive stock for the maintenance of herself and her children, and subject to such further disposition for that purpose as may hereafter seem necessary and proper.

---

OTHO SCOTT, for the Wife.

JOHN C. GROOME, and A. RANDALL, for the Husband's Assignees.