ANN HALL ET AL
vs.                        } MARCH TERM, 1852.
WILLIAM C. HALL ET AL.

[WIFE'S EQUITY—ACT OF 1841, CH. 161.]

THE wife is entitled to a provision out of her estate, when the aid of a court of equity is necessary to enable the husband or his assignees to get possession of it, as a matter *of right,* but the amount is a subject of discretion depending upon the special circumstances of each case.

The act of 1841, ch. 161, protects the interest of the husband in real estate of the wife from *liability* for his debts during the life of the wife, and this protection extends to the proceeds of such estate when sold for the purposes of partition.

[The real estate of Benedict W. Hall, who died in 1843, was sold under the decree in this case, for the purpose of partition amongst his heirs at law. One of those heirs, Jane S. Hall, previous to the death of her father, had intermarried with one William F. Turner, by whom she had issue, and who subsequently, on the 24th of March, 1843, applied for the benefit of the insolvent laws. His trustee in insolvency filed his petition in this case, claiming the value of said Turner's curtesy interest in his wife's share of said real estate, for the benefit of creditors. This application was resisted by Turner and wife, and they pray that, if any relief as sought for by the petitioner be granted, the court will protect the equity of the wife by allowing her, out of the proceeds of sale, such provision for the support of herself and children as justice and equity may require. They further allege in their answer, that they are the parents of nine children, all minors, that the husband is not

possessed of any real estate, and but a small portion of personal property, of small value, and that the wife's interest in her late father's real estate is applied for their benefit and support, and that of their children.

The real estate sold under the decree in this case, amounted to $21,255, of which the wife of Turner was entitled to one-eighth, after deducting the widow's dower interest. It was admitted, that the whole real estate of which said Benedict W. Hall died seized, was worth about $65,000 or $70,000, of which the wife of Turner was entitled to one undivided eighth, subject to the widow's dower. That his personal estate was not more than sufficient to pay his debts. That in 1842, said Turner purchased a tract of land in Harford county, containing about 300 acres, and worth about $11,000, of which he paid $8000, the balance, $3000, still remaining unpaid and a lien on the land, and on the same day conveyed it to said Benedict W. Hall, in trust, for the separate use of Jane S. Turner, his wife, who still holds the same. That the purchase money for this land was given to said Turner by his mother, with the express understanding, that the property to be purchased by him should be conveyed, in trust, for the separate use of his wife and children. That said land is claimed by the creditors of Turner as being chargeable with his debts, and proceedings are pending against the same. That in 1851, a certain David C. Springer sold and conveyed to Jane S. Turner, for her separate use, a farm situate in Harford county, containing about 154 acres, and worth about $6,500 ; that of this purchase there has been paid about $3700, of which $2250 was the proceeds of certain stocks devised to said Jane S. Turner by her grandmother, to her separate use, and proceeds of a distributive share in a legacy devised to her by her great grandfather, and the remaining $1500, proceeds of the sale of her father's real estate, and that no portion of this purchase money has been paid by said William F. Turner, who is not possessed of any property, real, personal or mixed, of any but small value, and that the balance of this purchase money is a lien upon the land, and she expects to pay it out of her share of the proceeds of her father's real es-

tate. That said Turner is now 42 years of age, and they have been married about 20 years, the wife being 38 years of age. That they have eight children now living, all under the age of twenty-one, the eldest being seventeen and the youngest about one year old. That said Turner has always been affectionate and attentive to his wife and children; is industrious and attentive in business, and until recently, he resided on the farm which was conveyed in trust for the use of his wife, but now resides on that bought from Springer; that he manages and cultivates the same, and with the proceeds has, in part, supported his family. That the above is all the property belonging to Mr. and Mrs. Turner. That the education of her children and other charges, suitable to the condition in life of her and her family and the style of living to which they have been accustomed, require a strict economy to enable them to live upon the means which they now enjoy, with the aid of said Turner, who is engaged in agricultural pursuits. That the debts which compelled said Turner to apply for the benefit of the insolvent laws, were contracted by him whilst engaged in the fishing business, which proved unprofitale, and that at the time of his application, he gave up all and every description of property possessed by him in his own right, for the benefit of his creditors.

The Chancellor delivered the following opinion upon this petition, answer and above statement of facts.]

THE CHANCELLOR:

The court does not deem it necessary in this case to institute a comparison for the purpose of ascertaining whether the circumstances existing here bring it within the principle settled by the case of *Mc Vey and wife* vs. *Taylor and others*, recently decided and reported in 3 *Md. Ch. Decisions*, 94.

The principle there decided, being that, when the aid of a court of equity is invoked to enable the husband or the assignee of the husband for value, or by operation of law, to get possession of the wife's property, the court will take care that a suitable provision is made out of the fund for the maintenance of the wife and her children, and that according to circumstances

the whole or a part only, will be settled upon her for that purpose. The fund in that case as in this, consisted of the proceeds of the real estate of the wife sold under a decree of this court, for the purpose of partition among the heirs at law. The parties claiming them were judgment creditors of the husband, who prayed that the equivalent for his curtesy interest in his wife's land might be paid to them, and the question was whether that interest should be taken out of the proportion of the proceeds of the sale assigned by the report of the Auditor to the husband and wife and paid to his creditors. But it was decided that the whole fund being necessary to provide an adequate support for the wife and children, the whole should be devoted to that object, and the decision, it is believed, is fully authorized by the present doctrine of the court upon this subject. It is a question always of course, whether the circumstances justify the application of the principle to the particular case. The wife is entitled to a provision out of her estate when the aid of a court of equity is necessary to enable the husband or his assignee to get possession of it, as a matter of right. It does not rest in the discretion of the court to give or withhold. Her title to a provision is placed by the Court of Appeals in *Duvall* vs. *The Farmers Bank of Maryland*, 4 *G. & J.*, 282, upon the firm ground of principle, and not upon the shifting and unsatisfactory footing of discretion, which is a foundation far too insecure for so important and useful a doctrine to rest upon. But though the right to a provision rests upon this solid ground, the amount is necessarily a subject of discretion, depending upon the special circumstances of each particular case, as it arises. The object of the rule is to provide a suitable and adequate provision for the wife and children, and to attain this object, when necessary, the court will give her the whole of her property, regarding that object as paramount to the rights of the husband or the husband's creditors.

The circumstances of this case, it has been forcibly urged, distinguish it strongly from that of *McVey and wife* vs. *Taylor*, and perhaps the points of difference are so marked, that it would not be easy to make the decision in the latter, so far as this particular question is concerned, applicable to the former.

I do not, however, propose to go into this inquiry, nor to express a positive opinion that, standing alone upon the equitable doctrine of the court as established by the adjudged cases, the circumstances of this case are or are not sufficient to justify the giving the whole of this fund to the wife for the maintenance of herself and her children.

The late Benedict W. Hall from whom the estate, which has been sold, descended to his heirs at law, the wife of William F. Turner being one, died in February, 1843, intestate, and consequently after the passage of the act of 1841, ch. 161. That act declares "that no real estate, hereafter acquired by marriage, shall be liable to execution during the life of the wife, for debts due from the husband."

As, therefore, the interest of the husband in this land, was acquired after the passage of this act, it is clear, and has not been denied, that it is protected from execution for debts due from him so long as his wife shall live. And, I do not suppose, that the legislature meant simply to protect it from execution, restricting that term to its technical signification, but they meant, I am persuaded, that during the life of the husband and wife, her lands should not be made liable to pay his debts. Why should it be protected from the execution of his judgment creditors and exposed to be sold by his insolvent trustee after those creditors had forced him to petition, as at the time of the passage of the act they might readily have done by the writ of *ca. sa.* ?

Looking to the policy and spirit of the act it would, I think, be falling short of the object which the legislature had in view, to confine its operation within the narrow limits contended for.

But, it is said, that though the act may suspend the right of the creditors of the husband, either by direct execution against the land acquired by the marriage, or through the instrumentality of his trustee, when he petitions for the benefit of the insolvent laws during the life of his wife, provided the nature of the property is not changed, yet if it be changed and converted into money, the property in its new shape is no longer under the protection of the law.

The proposition then is, that though the real estate of the wife may not be liable for the husband's debts during the life of the wife, if for any purpose it becomes necessary to convert that real estate, the protection of the law is withdrawn, and the creditors of the husband, so far as his interest is concerned, may seize upon it. If this be so, it would follow in many cases that the law which was intended to shield the real estate of the wife during her life from the claims of the husband's creditors, would be illusory and ineffectual, as it frequently happens that a sale for the purpose of partition is absolutely necessary, and may be enforced against the consent of the wife, or her interest may be converted into money by proceedings under the act to direct descents whether she consent thereto or not.

In this case the wife is still living, and, therefore, if there had been no sale, the creditors of the husband could not now resort to his interest in her land to pay their claims against him, and as the money, the proceeds of the land, must be regarded as standing in the place of the land, it appears to me, the act of Assembly extends to and protects it.

I cannot bring myself to think, that the legislature intended to restrict the humane provision of the law as has been urged by the counsel for the petitioner. The land of the wife may not only be sold without her consent, when other parties are interested in it as co-heirs, but it is frequently indispensable to the profitable enjoyment of the property that it should be sold, and to say, that in either case, the husband's creditors may at once, and in her life, lay their hands upon the proceeds, or any part of the proceeds, would be to frustrate the plainly indicated policy of the law.

Upon these grounds, then, and without expressing any opinion upon the other questions discussed at the bar, I shall refuse the application of the petitioner, and dismiss his petition, but without costs, as his conduct in bringing the question before the court was judicious and proper.

H. W. WEBSTER, for Petitioner.
OTHO SCOTT, for Respondent.