## WILLIAM A. NORRIS, *vs.* JAMES LANTZ, and ELIZABETH A. HYDE.

A sale of real estate, for distribution, was ratified, and the purchaser complied with the terms of sale by making the cash payment, and giving bonds for the credit instalments. An account, distributing the proceeds *to* the heirs, was finally ratified, and the trustee directed to pay accordingly. One of the heirs, *a daughter*, married *after* the account was stated, and a few days *before* the order of ratification, and shortly *before* the last instalment fell due, *she and her husband, by a written assignment*, under their *hands and seals*, assigned their interest in this instalment, amounting to $445.32, to the *purchaser;* and the husband, before the payment matured, absconded, and abandoned his wife and child. The purchaser having paid all the purchase money, except the sum so assigned to him, asked the court, by petition, to order the trustee to allow him this sum, and that the trustee be restrained, by injunction, from suing him or his bond, for the purchase money. The wife, in answer to this petition, claimed the *whole sum* as an equitable provision for herself and child. HELD:

That the purchaser was not entitled to the relief asked by him in his petition, and that the wife was entitled to the provision claimed by her, and that the *whole sum* should be assigned for the support of herself and child.

This assignment, under the circumstances, did not operate as a reduction to possession, nor even as a conversion, in extinguishment of such rights of the wife as a court of equity will recognize and enforce, upon an application for aid to make the assignment effective.

The right of a wife, in equity, to a present provision, or settlement, out of her *choses in action*, in restriction of her husband's power to reduce to possession, is supported by considerations and governed by principles, entirely distinct from those which pertain to and control her rights by survivorship.

The account and order of ratification did not constitute a *legal chose in action*, which vested absolutely in the husband; the order imposed on the trustee an *inchoate* obligation, which became complete, only, by expiration of the time limited for the payment of the purchase money.

Before the expiration of that period the trustee was in no default, and as the purchaser refused to pay, so that compliance with the order, by the trustee, was made impossible, no claim at law could be asserted against the trustee on the *chose* assigned.

The trustee might have recovered the money by a proceeding in equity, or a suit at law, but only by exercise of authority derived from, and subject to, jurisdiction in equity, and so long as resort to such authority is necessary to recover the fund due, it is exclusively within equity jurisdiction.

Norris *vs.* Lantz & Hyde.

The fund here being subject to the marital rights of the husband, and not the separate property of the wife, the fact that she united in the assignment of it, does not impair her right or interest in it.

All covenants, contracts and agreements, of a *feme covert*, except in regard to her separate property, are absolutely null and void, at law as well as in equity, and she is under no obligation, and cannot be compelled to perform them, whether made by herself, or on her behalf, by her husband, with or without her consent.

The equity of the wife to a provision or settlement out of her *choses in action*, whenever the aid of equity is necessary to obtain possession thereof, is an equity which attaches itself to the fund, and follows it in the hands of the husband's assignee, whether for value or not, or whether the assignment passes by the act of the party, or by operation of law.

APPEAL from the Equity side of the Circuit Court for Carroll County.

The real estate of John Lantz, deceased, was sold under a decree in equity, for distribution amongst his heirs.   At this sale, which was duly ratified, the appellant became the purchaser, made the cash payment and gave his bonds for the two credit payments, the last of which fell due August 16th, 1853. The appellee, James Lantz, was the trustee.   An audit distributing the proceeds to the six heirs, ($1013 to each,) *one of whom was Elizabeth A. Lantz*, was finally ratified by an order of the court, passed April 16th, 1852, and the trustee was thereby directed *"to pay over the proceeds of sale according to said audit."*   Three days *prior* to the passage of this order, Elizabeth A. Lantz intermarried with Joshua L. Hyde, and on the 2nd of July 1853, the said Hyde and wife by an assignment in writing,  under *their hands and seals*, assigned, *"for value received,"* to the appellant, Norris, "our whole and entire amount of money due us 16th August 1853, by James Lantz, executor or trustee of John Lantz, deceased, it being our whole interest in the last payment to said Lantz, by William A. Norris, on the farm purchased by him of said Lantz."

The share of this payment, to which Mrs. Hyde, or her husband in her right would have been entitled, was $445.32, which sum Norris claimed *under the above assignment*, and

Norris vs. Lantz & Hyde.

by his petition filed August 22nd, 1853, he asked the court to order the trustee to accept, (as he was ready and willing to pay the same,) the amount of his last bond, less this sum of $445.32, and that the same may be taken as full payment of the last instalment of the purchase money, (the others having been paid,) and for an injunction to restrain the trustee from suing him at law on this bond.   An injunction was granted as prayed, on the petitioner's bringing into court the amount of the bond, less said sum of $445.32.   This petition states that Hyde, the husband, had absconded from the State, and after order of publication, a decree *pro confesso*, as against him, was passed.   The trustee answered the petition, and Mrs. Hyde, who was allowed to file a separate answer, states therein that not understanding the legal effect thereof, she executed the assignment to Norris under the influence of her husband, who three days thereafter left her and her infant child, and went to parts unknown beyond the State, and is yet absent and has abandoned her and her child, and does not in any way render them any support.   She insists that upon the circumstances, she being a *feme covert*, this assignment is null and void, and that the sum in controversy is an equitable *chose in action*, still under the control of the court, and in equity belongs to her for the support of herself and child, and prays that the *whole thereof* may be secured for her separate support and benefit, and the support of her child.

Upon the answers of the wife and trustee, and after testimony taken, proving the execution of the assignment, the court (Nelson, J.) passed a decree that the petitioner is not entitled to the relief he prays by virtue of said assignment, dissolving the injunction, and directing the trustee to proceed to settle his accounts according to the principles of equity, and the future order and directions of the court.   From this decree the petitioner appealed.

The cause was argued before Bartol, Goldsborough and Cochran, J.

*Oliver Miller,* for the appellant.

1st. The sale of the land having been ratified by the court, and the purchaser having complied with the terms of sale by making the cash payment, and giving bonds for the credit payments, the mutation from real to personal estate was then complete. An audit was then made by which her proportion of the proceeds was audited to Elizabeth A. Lantz. She subsequently married, and *after marriage* this audit was *finally ratified,* and, by the order of ratification, the trustee was directed to pay the money according to the audit. Under such circumstances this was a *legal chose in action,* which vested absolutely in the husband, and if he had subsequently died, would have passed to his representatives, and not have survived to the wife. It was no longer under the control of a court of equity, nor had that court any jurisdiction to make an equitable provision therefrom for the wife, as in ordinary cases, where a husband or his assignee is seeking the aid of a court of equity to get possession of the wife's equitable *choses in action.* It was the husband's property which he could assign and dispose of as he saw fit, without his wife's joining with him in the assignment of it, and if the trustee had refused to pay it to him, he could have maintained an action *at law* upon the trustee's bond for the same. The assignee of the husband, (the appellant,) by his petition, does not seek the aid of a court of equity to obtain possession of money belonging to the wife, or out of which she was entitled to an equitable possession, but, having already obtained possession thereof by the assignment, he being the party *owing the money assigned,* he asks the aid of equity in his character of *purchaser* of the land from the trustee, in order that he may be released from his bond, and that the trustee may be compelled to settle with him, and convey the title, under the sanction and protection of the court. These views, it is believed, are sustained by the Maryland authorities. 6 *H. & J.,* 31, *State vs. Krebs.* 1 *H. & G.,* 267, *Leadenham vs. Nicholson.* 1 *G. & J.,* 450, *State vs. Annan.* 2 *G. & J.,* 81, *Hammond vs.*

---

Norris *vs.* Lantz & Hyde.

---

*Stier.* 2 *Md. Rep.*, 284, *Scott vs. State.* 3 *Md. Rep.*, 1, *Wiles vs. Wiles.* 4 *Md. Rep.*, 280, *Peacock vs. Pembroke. Ibid.*, 316, *Crane vs. Gough.* 1 *Md. Ch. Dec.*, 296, *Thomas vs. Wood.*

2nd. But even if this money is to be regarded as an *equitable chose in action* due to the wife, or as the wife's separate estate under the Act of 1853, ch. 245, or otherwise, it was still competent for husband *and wife* to unite in the assignment of it, as was done here, and such assignment was valid and effectual to transfer to the assignee all the wife's interest therein. 11 *Md. Rep.*, 492, *Cooke vs. Husbands.* 6 *Md. Rep.*, 375, *Turton vs. Turton.* 16 *Md, Rep.*, 91, *Gover vs. Owings.*

*Jos. M. Palmer,* for the appellees.

1st. The decree below was based on the principle that the money in the hands of the trustee, belonged to the wife of the assignor, and that she was entitled to an equitable provision out of the same, for maintenance of herself and child. It was money due the wife as a portion of her father's estate;—the proceeds of the real estate of her father, sold by the trustee, and is now under the control of a court of equity, and cannot be reached by the husband or his assignee without the aid of the court of equity. It is well settled that if a husband, or his assignee, wants the aid of a court of equity to get possession of the wife's property or *choses in action,* he must do equity, by making a proper provision out of it for the support of the wife and children, and, in a case like this, the court will allow the wife the whole, her husband having abandoned her with an infant child to support. It makes no difference whether the application to the court for the property be by the husband or his assignee, or by the wife or her trustee, seeking a provision out of the property;—this equity is equally binding, and the court may, and frequently does, in cases like this, in the exercise of a sound discretion, give the whole. The assignment by the husband does not change the equity of the wife,—the as-

signee stands in the place of the husband, and when he seeks to withdraw the funds from the hands of the trustee he will be compelled to do equity. He takes the assignment subject to the wife's equity, for he takes it with the knowledge that it is property derived from her, and knows at the time of the assignment, or is bound to know, all the equity to which it is subject. It is an equity which attaches itself to the fund and follows in the hands of the assignee whether with or without a valuable consideration, or whether the assignment passes by the act of the party or by operation of law. If there ever was a case requiring the interposition of a court of equity to protect the rights of the wife against the frauds and misconduct of a husband, this certainly is one. In support of these views see 4 *G. & J.*, 282, *Duvall vs. Farmers Bank of Maryland;* 3 *Md. Ch. Dec.*, 97, *McVey vs. Boggs;* 2 *Kent*, 121, 139, 141; 2 *Johns. Ch. Rep.*, 206, *Howard vs. Moffat;* 5 *Johns. Ch. Rep.*, 464, *Kenny vs. Udall*, and same case in 3 *Cowen*, 590; 11 *Ves.*, 17, *Wright vs. Morley;* 1 *Eden's Ch. Rep.*, 370, *Salisbury vs. Newton;* 6 *Eng. Law. & Eq. Rep.*, 97, *Cutler's Trust.*

2nd. Great reliance has been placed on the fact that Mrs. Hyde *joined* in the assignment of her right, but her signing the paper gave no validity to it. All the contracts of a married woman, as a general rule, are utterly void, and not binding upon her;—she cannot convey her property unless by virtue of some special law authorising her so to do. In England she can convey by fine and recovery, and in this State by executing a deed jointly with her husband, according to the provisions of the Act of 1766, ch. 14, sec. 6. All other contracts of a *feme covert*, except in regard to her separate property, are absolutely null and void, as well at law as in equity, and she is under no obligation, and cannot be compelled to perform them, whether entered into by herself, or on her behalf by her husband, with or without her consent. 4 *Gill*, 493, *Burton, et al., vs. Marshall.* It is a well settled principle of equity, that if a husband, or any person claiming his right as assignee,

seeks to reduce to possession any part of the wife's property of an equitable nature, under the control of a court of equity, that court will not suffer it to be removed out of its jurisdiction until an adequate provision shall be made for her, unless she has been sufficiently provided for, or unless on her personal examination, apart from her husband, she waives the benefit of the protection. 1 *Daniell's Ch. Pr.*, 115 to 119. 2 *Story's Eq.*, secs., 1413, 1418, 1420. *Clancy on Husband & Wife*, 425. 2 *Atk.*, 67, *Willats vs. Cay.* 4 *Ves.*, 17, *Macaulty vs. Philips.* 8 *Ves.*, 175, *Sperling vs. Rochfort.* 2 *Madd. Ch. Rep.*, 351, *Hornsby vs. Lee.* 1 *Russ.*, 48, *Purdew vs. Jackson.* 3 *Russ.*, 65, *Hanner vs. Morton.*

COCHRAN, J., delivered the opinion of this court.

The material facts presented by this record, in our opinion, neither support the propositions for which the appellant contended in the argument of the case, nor entitle him to the relief sought upon his petition and other proceedings thereon.

By the terms of the sale made and reported by the trustee, the credit payments for the property sold matured, respectively, on the 16th of August 1852, and on the 16th of August 1853. The account by which the distributive share of Elizabeth A. Hyde in the proceeds of the sale was ascertained and made payable, was ratified on the 16th of April 1852. The cash and first credit payments were made in accordance with the terms of sale by the appellant, as purchaser, to the trustee, and by him properly apportioned and paid over to the several persons entitled upon the account, leaving a balance of the distributive share of Elizabeth A. Hyde, of about $445.32 unpaid. The assignment, under which the appellant claims, was executed on the 2nd of July 1853. Immediately thereafter, and before the maturity of the appellant's last credit payment, out of which the balance of the distributive share of Elizabeth A. Hyde was to become payable, Joshua L. Hyde, her husband, abandoned her, and absconded;

Upon these facts the appellant contended that the account

and order of ratification, ascertaining the distributive share of Elizabeth A. Hyde, constituted a legal *chose in action*, which vested absolutely in her husband, and that by the assignment, operating as a conversion by the husband, the unpaid balance was transferred to the appellant free from any right on her part to an equitable application of it to her support. If the account and order constituted a legal *chose in action*, that vested absolutely in the husband, which—for reasons we shall presently notice—we do not admit, its assignment by him did not extinguish the liability charged by it upon the trustee, and it now stands, in the hands of the appellant, precisely as the husband held it before the assignment was executed. In no sense can it be said to have lost its distinctive character as a part of the distributive share of Elizabeth A. Hyde, nor can it be claimed in any other character or right by the appellant. If, then, the *chose* still exists unextinguished and unchanged—for the fact that it is payable out of indebtedness due from the appellant to the trustee, can not be considered as enlarging the rights of the appellant—the assignment did not operate as a reduction to possession, nor even as a conversion in extinguishment of such rights of the wife, as a court of equity will recognize and enforce upon an application for aid to make such an instrument effective, but as a conversion of his interest in the *chose*, and a transfer of the absolute power at law, or conditional one in equity, to reduce it to possession. The authorities cited by the appellant in support of the proposition in question, relate to rights by survivorship, and are definitive only of principles by which such rights are determined. The right of a wife in equity to a present provision or settlement out of her *choses in action*, in restriction of the husband's power to reduce to possession, is supported by considerations, and governed by principles, entirely distinct from those which pertain to, and control her rights by survivorship, and as the authorities referred to have no direct bearing upon the point, we deem a more extended notice of them unnecessary.

In regard to the other and principal part of the proposition,

that the account and order constituted a legal *chose in action*, we consider some expression of opinion at least proper, if not necessary, to the disposition of this case. The order ratifying the account and directing payment accordingly, must be construed consistently with the terms of sale limiting the times for payment to the trustee, of the money to be distributed by virtue of it. Under the circumstances we think, so far as the money in controversy is concerned, that the order imposed on the trustee an *inchoate* obligation, which could become complete only by the expiration of the time limited for the payment of the balance of the purchase money due from the appellant. Before that time the trustee could have been in no default, nor could he, in that respect, have been charged with any breach of the condition of his bond, upon which an action at law could have been maintained. These considerations, when connected with the further fact, that a compliance with the order was made impossible by the appellant's refusal to make the payment upon which the trustee's duty to distribute depended, forbid the assertion of any claim at law by him, against the trustee on the *chose* assigned. The trustee, by a proceeding in equity or suit at law, might have recovered the balance of the purchase money since it became due from the appellant, and thus have enabled himself to comply with the order, but it could have been only by the exercise of authority derived from, and subject to, jurisdiction in equity, and we think as long as a resort to an authority so derived, is made necessary to recover the money due, it is, while thus conditioned, exclusively within that jurisdiction, and not chargeable upon the trustee as a legal *chose in action*, by any one claiming it under the order for distribution. The cases of *State vs. Annan,* 1 *G. & J.,* 450, and *Scott vs. State,* 2 Md. *Rep.,* 284, referred to in support of the proposition contended for by the appellant, are not in conflict with the views we have expressed. In both of them the trustees had received the funds ordered to be distributed, and a failure to comply with the respective orders to distribute according to the ratified ac-

counts, was charged as the ground of the actions at law instituted upon their bonds.

The remaining material proposition, that the wife by uniting in the assignment, effected a full and valid transfer of all her interest in the fund in question, we think also untenable. "Except in regard to the separate property of a *feme covert*, all her covenants, contracts and agreements, in courts of law as well as of equity, are absolutely null and void, and she is under no obligation and cannot be compelled to perform them, whether entered into by herself, or on her behalf by her husband, with or without her consent." *Burton vs. Marshall*, 4 *Gill*, 487. As the fund in this case was subject to the marital rights of the husband, and not the separate property of the wife, we think her execution of the assignment does not impair her right or interest in it.

Though these proceedings were instituted to effect a release of the appellant from an amount of his indebtedness to the trustee, equal to the sum claimed by him under the assignment, they must in fact be considered as designed to extinguish the rights of the wife, and effect a reduction to possession of the *chose* assigned, and as he has invoked the aid of a court of equity to that end, he must submit to such conditions in her favor, as, in the discretion of such a court, may be imposed. That a court of equity may make a liberal provision for a wife out of her *choses in action*, under such circumstances, cannot be disputed. "Where the aid of a court of equity is necessary to enable a husband to obtain possession of the wife's personal property, he must do what is equitable by making a suitable provision for her maintainance out of it," and, "although there has been an assignment for a valuable consideration, the assignee, standing in place of the husband, and seeking to withdraw the funds, will be compelled to make the provision. He takes the assignment subject to the wife's equity, for he takes it with the knowledge that it is property derived from her, and knows at the time of the assignment, or is bound to know, all the equity to which it is subject. It is

an equity which attaches itself to the fund, and follows it in the hands of the assignee, whether with or without a valuable consideration, or whether the assignment passes by the act of the party or by operation of law." *Duvall vs. Farmers Bank of Maryland*, 4 *G. & J.*, 282.

In this case the wife, by her answer and petition, prays, that the money in controversy may be applied to the maintainance of herself and child, and the fact that she has been deserted by her husband, strengthens her claim, and invokes the most liberal exercise of the power of the court in her behalf. Under the circumstances we think the whole fund should be assigned for the support of herself and child, and will therefore affirm the decree and remand the cause for further proceedings in accordance with this opinion.

*Decree affirmed and cause remanded.*

(Decided March 14th, 1862.)