## BUCHANAN vs. DESHON, et al.—June, 1827.

An agreement between a man and his intended wife, in consideration of marriage, (which had none of the legal attributes of a marriage settlement, so as to overreach the claims of creditors,) to secure to her, for her own use, an annuity for life, may, after the marriage and the husband's death, be enforced by the wife against his representatives; and his estate, being insufficient to pay his debts, she will be treated as a general creditor to the extent of her claims under the agreement, and her dividend so invested, as to produce as much of the annuity as practicable. But in this case, the widow having only claimed payment of her annuity from the time of the death of her husband, her dividend was estimated upon its arrearages, from that time to the sale of his estate, and the interest which had accrued thereon.

By the same agreement, the children of the marriage, succeeding to the rights of the wife, the dividend of the husband's estate, invested for the benefit of the mother, will after her death, be divided equally among the children and their proper representatives.

An alien may purchase lands and hold them against every one, except the state, until office found, or until the government shall exercise its authority over them; but by the common law a *feme covert*, being an alien, is not entitled to be endowed, nor to inherit.

The act of 1813, *ch.* 100, does not authorise the endowment of a female alien, who during her coverture, never resided in the *United States*.

APPEAL from the Court of Chancery. The bill in this case was filed on the 1st of July 1818, by the appellees against *Esther Buchanan,* and others, as heirs at law of *William Buchanan,* deceased, for a sale of his real estate for the payment of debts due by him to the appellees. The answers admit the deficiency of personal assets, and the defendants assent to the sale of the real estate. They also state that they understand their mother, (who is the present appellant,) was a creditor also of the deceased under a marriage contract between her and the deceased, and refer to the same as it should be exhibited by their said mother. A decree passed as prayed for, and the appellant, under the usual order in such cases for creditors to exhibit their claims, filed two petitions on the 9th of May 1820. The first praying to be allowed a dower interest in the proceeds of the property to be sold; and the second exhibiting the marriage

contract between herself and the deceased, which is referred to by the answers, and praying to be allowed out of the said proceeds the amount due to her by the terms of the said contract, from the death of her husband.

The marriage contract here referred to, bears date on the 7th Prairial of the 12th year of the *French* Republic, (27th of May 1803,) and is stated to have been entered into "before certain Notaries Public of the *Isle of France*, between *William Buchanan*, consul of the *United States* of *America* for the *Islands of France* and *Bourbon*, residing in the N. W. port of the *Island of France*, being of age, a native of *Baltimore*, state of *Maryland*, *United States* of *America*, stipulating for himself, and in his own name, of the one part, and *Joseph Merven*, residing in this place," &c. "stipulating for Miss *Maria Emelia Louisa Merven*, a native of this colony, now under age, his daughter; and Miss *Merven*, residing with her father, stipulating likewise for herself and in her own name, of the other part. Who in presence of their relations and friends hereafter named, to wit," &c. "have agreed as follows upon the civil conditions of the marriage which will immediately take place between Mr. *Buchanan* and Miss *Merven*." The only articles in the contract which seem to be necessary to be inserted are—"*Article* 8. The future husband has endowed, and endows his intended wife with an annuity of two thousand effective hard *Spanish* Piasters, by the name of a settlement, *(douaire prefix*, or prefixed dower,) and exempt from all deduction, which she shall enjoy immediately upon the opening of said dower; the principal *(fonds, or funds,)* of which dower, at the rate of five *per cent.* shall go to the children which shall spring from the marriage of the future husband." "*Article* 9. The future husband makes by these presents a donation, in the best form that a donation can be rendered valid or take place, to his intended wife, who assents thereto under the authorization of Mr. *Merven*, her father, of all which the *French* or foreign laws permit him to dispose of, in any property which the said future husband may possess at the day of his death, in *France* and in foreign countries, whether there be then children in existence or to be born of the intended marriage or not. Should any children, living at the death of the

future husband, afterwards die before or after coming of age, and before the intended wife, without having disposed of their property, and without legitimate issue, in that case the intended wife shall take the amount of the donation as, if there had been no children." "*Article* 10. The future husband reserves to himself the power of disposing of one-fourth of his property." [This translation of the marriage contract was made and agreed to at theargument in this court, on the appeal.] The property was (afterwards) sold by the trustee appointed by the chancellor to make sale thereof, for $14,230, and the proceeds brought into the court of chancery for distribution. The auditor, under the orders of the chancellor, stated several accounts, which were submitted, &c. Other facts established in the cause, will appear in the opinion delivered by

BLAND, Chancellor, (May 4th, 1825.) The claim of *Maria E. L. Buchanan*, designated in the auditor's report of the 30th of November 1820, as claim No. 6, has been presented in various points of view, and in every shape is met by strong objections. She is an alien, who never was in this country until after the death of her husband; and therefore, can take no benefit under the act of 1813, *ch.* 100. Consequently, she is not dowable, according to our law, of any real estate lying in this state, of which her husband was seized at any time during the coverture. As an alien, she might take and hold real estate lying in this state, against all but the state, under the marriage contract. But that contract was, in no respect, made and executed in such manner and form as the laws of this state require conveyances of real estate in *Maryland* to be made and executed; and, besides, it has no reference whatever to the lands mentioned in this case, or indeed to any real property in this state.

A court of equity will decree the execution of a marriage contract, by which the husband binds himself to settle upon his intended wife all the personal property which he should at any time during coverture be possessed of. Thus making the covenant attach upon each article, that should, from time to time, come into the possession of the husband. But in the eighth article of the contract, now under consideration, by which

alone, if at all, this claim can be sustained, there is no general or specific designation of any property whatever, either real or personal.

The translation of the marriage contract is, in many respects, very defective.  It appears, however, to have been made according to the legal forms usual in those countries governed chiefly by the civil law; and in reference to that code, as modified by the customs of *Paris,* by which, it is believed, the *Isle of France,* where the parties then lived, as well as all the other *French* colonies, were governed.  The first part of the eighth article of this contract, on which this claim is said to be founded, speaks of a settlement to be made on the intended wife, to take effect on the marriage, of an income or jointure, (for *dower,* in the sense of our law it cannot be,) to be secured to her separate use, independently of her husband; in such manner, as was, no doubt, well known to the law of the place where the contract was made    And, it then closes with declaring, that the capital of that income estimated at five *per cent.* should descend and pass to the issue of that wife by that marriage.  It is a covenant, on the part of the husband, to settle upon his intended wife *a jointure of a specified value, and of a particular character known to the laws of the Isle of France; "douaire prefix,"* an endowment in frank bank, or a peculiar species of marriage settlement, by which no particular kind or parcel of property whatever was specially designated and described; and, therefore, it never could have been considered, according to our law, as giving to the wife or children a lien or claim of any kind upon any property, of which the husband ever was, at any time, seized or possessed.

But marriage, even at law, will not extinguish any prior contract between the parties upon which a right of action cannot accrue during the coverture.   As, where the intended husband covenanted to pay a certain sum of money to the intended wife, if she should survive him, or within a given time after his death; it was held, that the covenant was valid, and that the widow might recover the sum stipulated to be paid, from the executor of her deceased husband.

But the contract, in this case, does not merely stipulate for the payment of money upon the happening of a certain con-

tingency, and nothing more. It is not a mere obligation for the payment of money by the husband to the wife in the event of her surviving him; but it is a marriage settlement, in which an income or jointure of a certain value is to be secured to the wife during her life, and after her death the capital of that income, at five *per cent.* is to go to her children by that marriage. The eighth article contemplates, as a part of the general settlement, the creation of one entire estate, out of funds, real or personal, to be provided by the husband, the income, or present beneficial interest in which, was to be vested in the wife for life, with remainder over to her children. There is nothing in the general sense, object, and scope of the article, which can warrant a court of justice in treating it as a mere obligation to pay a debt, or sum of money in gross, or in considering the widow, under it, as a mere creditor of her late husband. In short, a covenant, in contemplation of marriage, to create an estate for the benefit of a wife and children, cannot, by an undue degree of liberality, be made to mean an obligation to pay a debt, or sum of money to the wife, to the prejudice of real *bona fide* creditors. This claim of *Maria B. L. Buchanan* must, therefore, be rejected.

These principles being thus settled and determined, the case is hereby again referred to the auditor, with directions to state an account accordingly, and to report the same to the chancellor preparatory to a final order for a distribution of the funds in the hands of the trustee. From this decretal order Mrs. *Buchanan* appealed to this Court

The case was argued at the last June term, before BUCHANAN, Ch. J. and STEPHEN, ARCHER, and DORSEY, J.

*R. Johnson,* for the Appellant, contended,

1. That the appellant was entitled to dower at common law, independently of the act of 1813, *ch.* 100.

2. If she was not so entitled, she is entitled to dower under the act of 1813, *ch.* 100.

3. If she is not entitled under that act, then she is entitled under the marriage contract.

4. She is entitled to come in as a preferred creditor under that contract.

5. She is entitled to claim her dower, and also a right to claim as creditor.

1. Is she entitled at common law? This is not a question between the state and Mrs. *Buchanan*, she being an alien. The land has been sold, and the question is between her and the creditors. It is laid down as a general rule, that an alien wife cannot be endowed. That is, she cannot claim against the state; not that she cannot claim against an individual. Her claim is good against all but the state. There had been no decision that an alien *feme covert* was not entitled to dower, and the object of the act of 1813, *ch.* 100, was to give to her the state's interest. An alien may acquire property by purchase for his own benefit; and no person can contest his right, but the state may. 1 *Bac. Ab.* tit. *Alien*, 8. *M'Creery's Lessee vs Allender*, 4 *Harr. & M'Hen.* 409. *M'Creery's Lessee vs Wilson*, *Ib.* 412. *Co. Litt.* 2, b, *(note 3.) Page's* case, 5 *Coke*, 52, b. *Mooers vs White*, 6 *Johns. Ch. Rep.* 360. *Orr vs Hodgson*, 4 *Wheaton*, 453. 2 *Blk. Com.* 132, 241.

2. If she is not entitled at common law, she is entitled under the act of 1813, *ch.* 100. This act was in force at the time of the death of the husband, then at the *Isle of France*. On his death his widow came to this country, and has resided ever since. It is admitted she was never here during the life of her husband. Her husband was a public agent of the government of the *United States;* and in construction of law his residence continued to be within the *United States.* An enlarged construction should be given to the act in favour of the widow. She has resided here *since her marriage*, although not during her marriage. This right of the widow is also secured to her by the act of March 1780, *ch.* 8, *s.* 2, and the *seventh article* of the convention between the *United States* and *France* of the 30th September 1800.

3. She is entitled to dower under the marriage contract. For this purpose the 8th and 9th articles only of that contract are important. A marriage settlement is to be construed liberally. If in a devise it would apply to real as well as to personal estate, then under the *ninth* article it vested, one third in her of his real estate. She is to be considered as a purchaser. 2 *Blk. Com.* 292, 293. *Higgenson vs Kelly*, 1 *Ball & Beatty*, 252. *Parkes vs White*, 11 *Ves.* 235.

4. She is entitled to come in as a preferred creditor under the marriage contract. It was not void as to creditors; because there were no creditors at the date of the contract. But whether there was or was not a creditor at that time or since, a marriage contract is valid against prior as well as subsequent creditors. *Nairn vs Prowse*, 6 *Ves.* 759. *Reade vs Livingston*, 3 *Johns. Ch. Rep.* 494. By the 8th article of the contract she is to be considered as a creditor. The husband thereby covenanted that on his death his wife should receive an annuity of $2000. 5 *Bac. Ab.* tit. *Obligations*, 155. She is entitled to come in as a preferred creditor to the amount of her annuity. The husband having set no estate apart to pay her, makes no difference. He left no estate but the land out of which the fund in question has arisen; and it will be presumed that she should be paid out of it.

5. The allowance of the annuity is not stated to be in lieu of her dower; and the 9th article shows that it was not so intended. *Birmingham vs Kirwan*, 2 *Sch. & Lef.* 451. *Foster vs Cook*, 3 *Bro. Ch. Rep.* 347.

*Marriott,* for the Appellees. The claim of the appellant is to be considered in a two-fold view. 1. As to her dower at common law, or under the act of 1813, *ch.* 100. 2. As to her claim under the marriage contract.

1. It is well settled that an alien is not entitled to dower at common law. *Co. Litt.* 31, *(note 9.)* 1 *Bac. Ab.* tit. *Alien,* (C) 136. *Kelly vs Harrison*, 2 *Johns. Cas.* 29. The appellant never had a capacity to take. She never had any vested right. *Vat. L. N.* 102. The act of 1813, *ch.* 100, shows that there could be no claim to dower at common law, or that act would not have passed. That act gives dower only to married women being aliens, who may have been married in this country, and who reside here with their husbands, or at least they must be residents here at the time of the deaths of their husbands. The wife must reside here after her marriage—meaning she must reside here after and during her marriage in the lifetime of her husband, and not that she might come here and reside after the death of her husband. If that were the case she might, after the death of her husband, come here and reside

one week, receive her dower, and return to her own country. This was not the intention of the act of assembly, and it is not within its sound construction. The act of March 1780, *ch.* 8, is not applicable to this case. That act was predicated upon the then existing treaty between this country and *France* in 1778, which treaty has been since annulled by an act of congress in 1799. Congress alone could, since the adoption of the constitution, pass acts of naturalization; and they legislated upon this subject as early as 1790. The convention between the *United States* and *France* of 1800, expired in 1808, before any vested right accrued to the appellant, even if she could have claimed under it were it now in existence.

2. The contract relied on as a marriage settlement is not regularly that which it is stated to be. It is a mere contract. *Rundle vs Murgatroyd,* 4 *Dall. Rep.* 305. If it is a marriage settlement it has not been legally executed agreeably to our laws, so as to operate upon the husband's real estate here. The widow, therefore, under that contract, is not entitled as a common creditor; but if she is to be considered as a creditor at all, she cannot be a preferred creditor; she may come in after all the debts are paid. *Prec. in Chan.* 539. *Underwood vs Hithcox,* 1 *Ves.* 279. *Anonymous,* 2 *Chan. Cas.* 17. *Emery vs Wase,* 5 *Ves.* 846. The contract is unreasonable, and ought not to be enforced. 2 *Pow. on Cont.* 221, 222.

*Mayer,* on the same side. This is an unreasonable settlement, and should not be enforced against creditors. It is a vague instrument, dealing in generals, and is not formally executed agreeably to our recording laws, so as to affect real estate. It is not tantamount to a grant of an interest. The 8th article of the marriage contract gives a bounty to the wife out of the husband's general estate, in preference to his disposing power. She does not take as a purchaser, but she takes it as a gift. The fund produced by the sale of the real estate ought not to be appropriated to pay this bounty in exclusion of the creditors. Real estate in this state is similar to personal in payment of debts. This contract is not better than a voluntary settlement, which a court of equity will set aside when to the prejudice of creditors. To make it a marriage settlement an estate must be

set apart to meet the claim which the wife is to take after her husband's death. *Garthshore vs Chalie*, 10 *Ves.* 1, 20. To entitle the appellant to recover she must show she had a grant of the specific property which has been sold under the decree in this case. There can be no such thing between husband and wife as debtor and creditor. The wife, to claim, must do so as purchaser. *Rundle vs Murgatroyd*, 4 *Dall. Rep.* 304. Where the husband receives the wife's funds, she cannot come upon his estate as a creditor. *Powell vs Hankey*, 2 *P. Wms.* 82. 1 *Bac. Ab.* 479. The eighth article of the contract looks to property to be thereafter settled on the wife in strict conformity to that contract. There being no settlement of any such property made, the covenant can have no effect. Suppose this land had been taken in execution during the life of the husband, what would have been the situation of the wife? She could not go into equity, because this land was not set apart to meet her claim. The contract is not to be regarded as an ante-nuptial settlement. It has none of the attributes of such a settlement; and not being so, the widow cannot be considered as a preferred creditor: It is a prodigal allowance which a court of equity will not sanction—there was not a sufficient pecuniary consideration upon which to found it. *Dewey vs Bayntum*, 6 *East*, 257. If the widow is entitled to dower, send her to a court of law to recover it. She has no equity under so unequal a settlement with reference to her merit or her fortune. The act of 1813, *ch.* 100, gives her no right to dower, because her right must have commenced, and be consummated at the death of her husband. On his death she was not a resident of this state, or of the *United States*, and therefore no dower interest vested in her. Under the act of March 1780, *ch.* 8, *French* subjects might hold lands in this state. Mrs. *Buchanan* then may hold lands during her life, but that holding commences with her residence; but not to give birth to any right antecedently acquired. The right must commence after her residence. This act is nothing more than the act of 1813, *ch.* 100. It must be a residence during the life of the husband. The treaty was to secure the right of inheritance only—such an interest as could be devised; and it is inapplicable to the question now before this court. Dower is not claimed upon independent grounds in opposition

to the husband. It is a peculiar estate; and the wife is in as of the estate of her husband. *Co. Litt.* 241. *a.* The widow is not to be assimilated to a plaintiff in ejectment, where an alien may recover against an individual.

*R. Johnson*, in reply, referred to *Chirac vs Chirac*, 2 *Wheat.* 259. *Kelly vs Harrison*, 2 *Johns. Cas.* 29. 1 *Bac. Ab.* 484.

*Curia adv. vult.*

ARCHER, J. at this term, delivered the opinion of the Court. The creditors of *William Buchanan* applied to the court of chancery for the sale of his real estate to pay his debts, his personal estate being insufficient for that purpose. A decree passed for its sale, and the proceeds were brought into the court of chancery for distribution. Mrs. *Buchanan*, his widow, to whom he was married in the *Isle of France* in the year 1803, applied by petition to the court of chancery to receive a dividend as a creditor, in virtue of certain marriage articles entered into between herself and her husband before their intermarriage in the *Isle of France;* and also claimed that a certain portion of the proceeds of sale should be allotted to her in lieu of her dower in the lands. Mrs. *Buchanan* was an alien, never naturalized, and continued to reside in a foreign country until the death of her husband. Both these pretensions have been rejected by the chancellor, and she seeks redress from his judgment by an appeal to this court.

Mrs. *Buchanan*, being an alien, is by the common law not entitled to dower in the lands whereof her husband died seized. An alien may purchase lands, and hold them against every one, (except the state,) until office found, or until the government shall exercise its authority over them. But an alien cannot inherit lands—the law, which never does any thing in vain, will not cast the inheritance upon one whom its policy forbids should hold it.

The widow cannot be considered as a purchaser, and, therefore, entitled to hold her dower until office found, but comes to her estate by operation of law, as does an heir by descent; and, therefore, cannot take it, and is in the same predicament as an

alien claiming to inherit. Either could take by act of the par-
ties, as by purchase, but neither by operation of law.

The act of assembly of 1813, *ch.* 100, which authorises the
endowments of aliens residing after their intermarriage in the
*United States,* does not, it is believed, reach a claim situated
as this is. Mrs. *Buchanan* never resided, as it is admitted, at
any time during the coverture, in the *United States,* and with-
out such residence she was not entitled to any benefit of the
provisions of that law. The legislature contemplated a capaci-
ty to take dower at the instant of the husband's death, and did
not mean that the estate, *which* should descend to the heirs at
law, should be liable even for a season, at any distant period to
be divested by the contingent removal and residence of the wi-
dow within the limits of the state.

It is not perceived what operation the treaties between the
*United States* and the *French* government of 1778 and 1801,
or the act of assembly of 1780, *ch.* 8, can have in giving effect
to the claim of the appellant to dower. The *seventh* section of
the last convention gave to *French* subjects power to dispose
by donation, testament, or otherwise, of goods, moveable or
immoveable, held in the territory of the *United States,* to
such persons as they shall think proper; and by the same arti-
cle the capacity to inherit is conferred on the citizens of the
then *French* Republic. Thus was given the power to devise,
and the capacity to inherit. It is doubtful whether by the most
liberal construction, this clause in the treaty could be made to
extend to a claim for dower; yet if extreme liberality were to
give to its terms such a construction, yet it must be observed
that the treaty expired by its own limitation in 1809, before
the death of *William Buchanan.* If a right had vested un-
der this treaty, there can be no doubt but that such right would
be maintained notwithstanding the expiration of the treaty, and
that it would have been equally valid as if the treaty had a per-
petual duration. But Mrs. *Buchanan* had no vested right, it
was altogether contingent, depending upon her surviving her
husband, and her rights actually accruing before the treaty
should expire. It had (if the treaty by any possibility could be
considered as embracing it,) a mere inception and commence-
ment, and was not perfected and complete until the death of

her husband, and until the treaty had expired, at which time her capacity to take her dower, with which she might have been clothed, during the existence of the treaty, ceased with the expiration of that convention.

The treaty of 1778, (which was followed by the act of 1780, *ch.* 8,) provided the subjects of the King of *France* should not be reputed aliens, and gave a disposing and inheritable capacity to them; but whatever might be considered the operation of this treaty, it was abrogated in 1798, long before any right to dower in the appellant could have had even an inception; and the act of 1780, *ch.* 8, (passed no doubt in part with the view of giving efficacy to the liberal principles of this treaty, and from a supposed necessity of some legislative act being necessary to give operation to it, being passed as it was under the confede- ration,) will be found not to be coextensive with the provisions of the treaty to which it refers, and to contain no enactment (considering it as a permanent law,) which reaches, or in any manner could affect the claim of the appellant.

From the above views it appearing that Mrs. *Buchanan's* alienage would preclude her from her enjoyment of dower, it is rendered unnecessary to examine the marriage articles for the purpose of ascertaining whether the covenants therein contained legally or equitably barred her of dower, nor shall we express an opinion upon that subject.

If the appellant is not entitled to dower, it is contended that she is entitled to be considered as a preferred creditor, to the ex- tent of her claim, under the marriage articles, or, at all events, to be considered as having an equal right with the other credi- tors for a distributive share of the proceeds of sale.

It is not perceived upon what ground her pretensions to a preference can be rested. The articles cannot be viewed as a settlement, but must be considered merely in the light of a cove nant or agreement made for the valuable consideration of mar- riage. To maintain this position no authorities need be cited; it may be sufficient to say that the marriage articles have no one legal attribute of a marriage settlement, so as to overreach the claims of creditors. But why should she not be considered in the light of a general creditor of her husband's estate, and although entitled to no preference, yet to an equal claim with the rest of

the creditors? The absence of a settlement has no bearing on the question. A legal obligation can be created without such settlement. A covenant or agreement before marriage, to pay her a given sum of money, could, after his decease, be enforced against the husband's representatives. Then why could not this agreement to pay her an annuity? It was made upon a consideration which was valuable, and one upon which the law always looks with a favourable eye. The mode stipulated by which it is to be raised ought not to affect her substantial rights under the agreement. The great object of the 8th article was to secure her the payment of an annual sum, and must be equivalent to an agreement or obligation for that purpose—the mode by which it was to be effected was to her immaterial. Had a settlement, after marriage, been made, grounded upon this ante-nuptial agreement, it would have been clearly sustainable against the claims of the creditors. *Rob. Fraud. Conv.* 218. And it is not perceived why a failure on the husband's part to comply with the agreement, can have the effect, not only of depriving the wife of a preference over other creditors, but of postponing her claim until they shall be entirely satisfied. The obligation to pay cannot be lessened by the neglect to set apart the fund from which the annuity might arise. If we ought not to look with peculiar beneficence upon her claim, it is surely entitled to equal regard and consideration with those of the creditors. Her pretensions are condemned by no fraudulent considerations, but are built upon the same moral foundation upon which those of the creditors rest.

Her right to come in with the general creditors having been determined, the extent of that claim is the next question for consideration. The 8th article of the marriage agreement, upon which it rests, is peculiarly worded; but we cannot doubt, upon a just construction of it, that she was to receive an annuity during life of $2000.

It would be difficult to resist the claim of Mrs. *Buchanan* to the payment of the annuity during the whole period of the marriage. We conceive that it commenced at the period of their union; for the parties covenant that there shall be no community of property, and the husband covenants to support the domestic establishment, and to maintain his wife and children

out of his own resources. Hence there could be no room to suppose or presume that this annuity was applied during coverture to the maintenance of the wife, as it might be if the husband had not explicitly bound himself to support her out of his own estate. We could not consider her maintenance as equivalent to the annuity, because it does not appear to be secured for such an object. Nor can we conceive that the circumstance of her never having demanded it during her coverture, could be considered as a waiver of her right, for she was under the legal control of her husband, and sufficient reason might spring from such a consideration for her failure to demand the annuity; but we are precluded, from the shape in which these proceedings are presented to the court, from making her a creditor on the estate for the amount of her accruing annuity during coverture, as it does not appear to have been claimed on her part, and she only seeks to be considered a creditor from the death of her husband,

The auditor has valued the life annuity, and added it to the arrearages claimed, for the purpose of ascertaining her debt; and, for the purpose of ascertaining the childrens' claim he has given them *in presenti*, a sum in lieu of what they are by the contract to receive at their mother's death. It must be observed, as an objection to this course, that the children by the agreement were not to have any thing until their mother's death; and the contract of the husband with the wife and children, will be both gratified by considering the capital of $40,000, from which was to arise the annuity, as a claim entitled to a dividend, equally with the other claims, which dividend should by the court of chancery be invested in some profitable stock, the accruing interest on which should be directed to be paid to the mother for life, and the principal at her death be distributed equally among the children. The auditor has calculated the arrearages of the annuity from the death of *W. Buchanan*, with the accruing interest to the day of sale. These arrearages properly constitute the debt due her, and when the amount shall have been ascertained she must, for such an amount, be considered a creditor, and entitled to a dividend. This dividend then, together with the interest which shall arise on the investment, which it has

been suggested should be made, will constitute her entire claim against the estate of her husband.—*Decreed*, that the order or decree of the court of chancery of the 4th of May 1825, so far as it rejected the claim of the appellant to be allowed any portion of the proceeds of the sale of the real estate of her husband, *William Buchanan*, be reversed, with costs to the appellant, both in this court and in the court of chancery. And this court proceeding to decree, as they are of opinion the chancellor should have done, do further *decree*, that the appellant is entitled to a dividend out of the amount of the proceeds of the sale of the said real estate, as a general creditor upon the said fund to the amount of the arrearages of the annuity due to her under the marriage contract between herself and her said husband, in the proceedings mentioned, together with the accruing interest on the said annuity from the time of the death of her said husband, to the time of the sale of his said real estate, as estimated and ascertained by the auditor of the court of chancery by his account in the proceedings accompanying his report of the 30th of November 1820. *Decreed* also, that over and above the said amount due to the appellant for the arrearages of the said annuity, and with a view to give her the full benefit of the said marriage contract, as far as may be, consistently with the rights of the other creditors of the estate of *William Buchanan*, and of the rights secured to the children of the said marriage, that the capital of $40,000 from which the annuity to the appellant, under the said marriage contract, was to arise, be considered as a claim entitled to a dividend equally with the other proper claims against the proceeds of the sale of the said real estate. *Decreed* also, that the amount of the said dividend upon the said sum of $40,000 be invested by the court of chancery, or under its direction, in some profitable stock, or in some good real securities, as in the discretion of the chancellor shall seem to him sufficient, and under all circumstances most to the interest of the appellant and her said children, to be selected by the court of chancery; and that the said court shall direct the whole of the interest or profits which may from time to time accrue upon the said stock or real securities as aforesaid, during her life, to be paid to the appellant, or her representatives; and that at her death, the

whole of said investment of the dividend of $40,000 be divided equally among the children of the marriage of the appellant, and the said *William Buchanan*, or their proper representatives. *Decreed* also, that the chancellor pass all such orders and decrees in the premises as may be necessary to carry this decree into effect.

DECREE REVERSED, &c.