(Decided 15th December, 1875.)

DAVID OSWALD, IGNATIUS G. BROWN, and others *vs.* ELIZABETH C. HOOVER.

*Marital rights of the Husband in his Wife's property acquired before the adoption of the Code—Relation of Debtor and Creditor as between Husband and Wife—Claim of Wife against the Estate of her Husband for money which she had loaned him—Limitations—Lapse of time. Interest*

Money received by the husband from his wife's distributive share of her father's personal estate before the adoption of the Code, must be governed by the law then existing, applicable to such fund, and is not subject to the same principles which affect her share of the proceeds of the real estate.

The personal estate the husband was entitled to receive in his own right, and any promise or agreement he may have made to pay it to his wife, is a mere voluntary promise without consideration, and can form no ground of claim against him or his estate.

Oswald, *et al. vs.* Hoover.

A husband received his wife's share of the proceeds of the sale of her father's real estate, sold under a decree of partition passed on the 2nd of December, 1856, and applied the same to the purchase of land in his own name, under a promise to her before the purchase, that the money should be so applied, and treated as a loan to him. A portion of the money was received in April, 1857, and the balance in June, 1860. The husband subsequently conveyed all of his property to a trustee to be sold, and the proceeds thereof distributed among his creditors. The property was sold and a report of the sales made to the Circuit Court of Washington County, in Equity, by which the same were ratified and confirmed. The wife, under the usual notice by the auditor of the Court, to all persons having claims against her husband to file the same, filed her claim for the amount of her loan to him. Upon exceptions to this claim by the creditors of the husband it was HELD :

1st. That the wife's claim was an equitable one, and should be allowed.

2nd. That it was not barred by limitations, or lapse of time short of twenty years.

3rd. That having received a support from her husband from the time of the loan, she was not entitled to interest on the claim, except a due proportion of the interest received by the trustee from the sales.

That the relation of debtor and creditor may exist between husband and wife in Equity, is too well established to be questioned.

APPEAL from the Circuit Court for Washington County, in Equity.

John Hoover and the appellee, were married in February, 1855. Sometime in the year 1856, Jacob Krouse, the father of the appellee, died intestate, leaving real and personal estate. The real estate was sold under a decree of the Circuit Court for Washington County, as a Court of Equity, passed on the 2nd of December, 1856, and the sale was ratified on the 3rd of March, 1857. The proceeds of this sale were distributed to the heirs of said Krouse, of whom the appellee was one. There was distributed to her by the auditor's first account, the sum of $500.90, which account was duly ratified in April, 1857 ; and by the auditor's second account which was duly ratified in June, 1860, the sum of $1,690.62, these two distributions being

her portion of the proceeds of said real estate. There was also distributed to her from her father's personal estate, the sum of $376.80; and from the personal estate of her mother; who died in the year 1870, the sum of $312.12, making in all, $2,880.44. These distributions were received by John Hoover, and were invested by him in land, for which he took a deed in *his own name,* and afterwards sold the land so purchased by him, and bought other land, for which he also took a deed in his own name. On the 3rd of March, 1871, he executed a deed of trust to his brother, David Hoover, Jr., conveying all his property for the payment of his debts. The proceedings in this cause, were instituted by the petition of the trustee under said deed of trust, praying that the said trust might be settled up and conducted under the supervision of said Court, and that the moneys coming into his hands as trustee as aforesaid, might be distributed by the auditor, in accordance with the terms of said deed. Among other creditors who filed their claims in the cause, the appellee exhibited her's for the said sum of $2,880.44, being the aggregate amount of said distributions, and claimed to be a creditor of her husband to that extent.

In the auditor's accounts, the claim was allowed as presented, and received its distributive share of the proceeds of sale. Exceptions were filed to this allowance of the claim, by creditors of John Hoover, but were overruled by the Court, (MOTTER, J.,) and from the order overruling the exceptions and allowing the claim, the present appeal is taken.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*George W. Smith* and *Wm. T. Hamilton,* for the appellants.

The distribution made to Mrs. Hoover, from the proceeds of the sale of the real estate of her father, was not her

separate property, but the sale being made under a decree of Court, and ratified in the year 1857, the change from realty to personalty was complete, and the same became *choses in action* of the wife, to which the husband was entitled as of his absolute property, and for which he alone could sue and recover, and could not be restrained by a Court of Equity. *State vs. Krebs*, 6 *H. & J.*, 31; *Newcomer vs. Orem*, 2 *Md.*, 297; *Wiles vs. Wiles*, 3 *Md.*, 8 and 9; *Shuttlesworth vs. Noyes*, 8 *Mass.*, 229; *Turton's Ex'rs vs. Turton*, 6 *Md.*, 380 and 384; 2 *Bacon's Abridgment*, 29, *Baron and feme; Peacock vs. Pembroke, Garnishee, &c.*, 4 *Md.*, 280; *Griswold vs. Penniman*, 2 *Conn.*, 564.

Such was the common law and the law of Maryland, at the time the sale was made and ratified by the Court, and the purchase money paid, and therefore vested the proceeds absolutely in the husband.—The laws of Maryland, up to the year 1860, did not change the marital rights of the husband. In the case of *Schindel vs. Schindel*, 12 *Md.*, 294, it is decided that the Acts of 1841, ch. 161, 1842, ch. 293, and 1853, ch. 245, relating to the rights of married women, simply protect the property of the wife from the debts of the husband during her life, and in no other way interfere with the marital rights of the husband, but *leave to him all his marital rights as secured by the common law.* The law remained so in this State until the Act of 1860, as contained in the Code, and before that time the wife had no separate property, unless the same was given to her by deed, devise, &c., using technical language to make it separate estate, as decided in numerous cases. 2 *Story's Eq. Jurisprudence*, sec. 1372; *Turton's Ex'rs vs. Turton*, 6 *Md.*, 383 and 384; 2 *Kent's Comm.*, 129.

But the Code, Art. 45, secs. 1 and 2, for the first time, made property acquired, as therein provided, the *separate property* of the wife, and it then became, and *not until* then, the subject of contract between husband and wife; all the

decisions on this subject show clearly that a husband and wife, can only contract with reference to the wife's *separate* property, and that even when the wife permits the husband to receive her *separate* property, and convert it to his own use, she cannot afterwards charge his estate with it. *Edelen vs. Edelen*, 11 *Md.*, 415 ; *Kuhn vs. Stansfield*, 28 *Md.*, 210 ; *Wylie vs. Basil*, 4 *Md. Ch. Dec.*, 327.

But in this case, there was no *separate* property of the wife, and there could be no contract between the husband and the wife, that he should pay back to her, property which the law regards as his absolute estate ; there is no consideration, and it would result in a mere gift from husband to wife, and this the law will not allow, as a *féme covert*, as the law then stood, was incapable of taking anything by gift of her husband. See 20 *Bacon's Abridgment*, 29, *Baron and féme.*

And any contract between a husband and wife, or promise by the husband to pay the wife, for property which the law vested in the husband, as in this case, is a *nudum pactum* and void.

*Attorney General Syester*, for the appellee.

The relation of debtor and creditor can exist between husband and wife, and contracts out of which such relations spring, will be enforced in Courts of Equity. 2 *Story's Eq. Juris.*, secs. 1368 *and* 1373 ; *Stockett, Adm'r of Locke vs. Holliday & Wife*, 9 *Md.*, 498 ; *Bowie vs. Stonestreet*, 6 *Md.*, 430 ; *Jones, Adm'r of Horsey vs. Jones & Wife*, 18 *Md.*, 468 ; *Edelen vs. Edelen*, 11 *Md.*, 420 ; *Livingston vs. Livingston*, 2 *Johns. Ch.*, 537 ; *Atherley on Marriage Settlements, side pages*, 161, 162, 163 ; *Kuhn vs. Stansfield*, 28 *Md.*, 214.

The right of husband and wife thus to contract being established, a contract, when entered into between them, is governed by the same rules that apply to similar contracts between other persons ; and as it is perfectly com-

petent for the relation of debtor and creditor to exist between other parties, without such contract being reduced to writing, so in case of husband and wife the relation can subsist, though the contract rest in parol.

Conceding for the sake of argument that the moneys of the appellee derived from her father's and mother's real and personal property, were not, by reason of the source or mode by which she derived the same, created her legal technical separate estate, the further question presents itself, was there a consummated purpose on the part of the husband himself to settle these several sums of money upon his wife to her sole and separate use, *after he had received them?*

That he had the power to do so, is clearly seen by the language of the Court in the case of *Turton's Exc'rs vs. Turton,* 6 *Md.,* 382. In that case, the Court say: "the inquiry is, did he (the husband) intend to exercise that power, and has he effectually done so?" There they decided that there was no evidence to warrant such a conclusion. The husband's whole conduct was in no wise inconsistent with a fixed purpose to treat and use the money as his own. How different is this case? Here all the evidence most convincingly shows that John Hoover never intended, and never *did* use this money as his own; he treated it as his wife's; *borrowed* it of her, and promised to repay it to her; made himself her debtor and by his whole conduct made it inconsistent with any other conclusion than that he regarded the money as hers and *not* his. 2 *Bright on Husband and Wife,* 115.

It is well settled in Maryland, that a wife may contract with her husband; that she may become his creditor, even though the property or money which forms the basis of their transactions is not *separate estate;* and such contracts, when entered into, and clearly proven, as in our case, will be enforced by the Courts, and the wife will be regarded by the law with as much favor as other creditors.

The cases of *Bowie vs. Stonestreet*, 6 *Md.*, 418; *Stockett, Adm'r of Locke vs. Holliday and Wife*, 9 *Md.*, 480; *Jones, Adm'r of Horsey vs. Jones and Wife*, 18 *Md.*, 466; *Mayfield vs. Kilgour*, 31 *Md.*, 240, conclusively establish this doctrine.

The cases cited by the appellants in support of the position, that there was a conversion of the realty into personalty, and that the husband thereby became entitled to the same as of his absolute property, all arose under the laws in force prior to the Act of 1853, ch. 245, and in none of them was there any testimony to show that the husband did not intend to treat the property as his.

But this Court in construing this Act of 1853, in 27 *Md.*, 436, in the case of *Smith, Garnishee of Lester vs. McAtee*, say: "the object contemplated by this law is too clear for doubt; by its enactment, the Legislature intended to give full protection and security to the property of the wife against the creditors of the husband, as previous to its enactment the cases of *Peacock vs. Pembroke*, 4 *Md.*, 280, and *Turton vs. Turton*, 6 *Md.*, 375, had been decided by this Court, and in each case, the property was adjudged to be the husband's, and subject to the payment of his debts." So that the Act of 1853, ch. 245, which is applicable to this case, was enacted for the express purpose of altering or abolishing the law on this point, as laid down in the cases relied upon by the appellants.

Again, that the wife's equity to a settlement out of the proceeds of her father's and mother's estate, is a sufficient consideration to support the promise of her husband to repay her her distributions, cannot be doubted; had she in the proceedings had on the bill filed for partition of her father's estate, insisted upon such equity, provision must needs have been made for her. But the *promises and agreement* made to and with her by her husband *before the sale of the land*, rendered such application to the Court unnecessary; because her husband had *voluntarily*

done that which the Court upon application, would have ordered to be done. *Smith, Garnishee vs. McAtee*, 27 *Md.*, 420 ; *Norris vs. Lantz*, 18 *Md.*, 260.

The Statute of Limitations is also relied upon by the appellants as a bar to the claim of the appellee. The testimony in the cause conclusively shows, that at different periods, and particularly within three years prior to the execution of the deed of trust, and the filing of Mrs. Hoover's claim, the husband acknowledged a present subsisting debt, and expressly promised to pay the same. But even these acknowledgments and repeated promises were not necessary. The claim was of such a character, viz : that of a wife against her husband, that no Statute of Limitations could operate as a bar ; nor could her claim be defeated under the rules which govern Courts of Equity in relation to lapse of time or the staleness of claims. *Bowie vs. Stonestreet*, 6 *Md.*, 431 *and* 432.

The cases of *Barton vs. Barton*, 32 *Md.*, 224, and *Hill vs. Hill*, 38 *Md.*, 183, re-affirm the doctrines laid down in the cases already cited, respecting the relation of debtor and creditor between husband and wife, and what is requisite to create this relation.

STEWART, J., delivered the opinion of the Court.

The appellee was married in February, 1855, to John Hoover.

Her father died intestate the following year, and his real estate was sold during the year, under decree for partition, and Hoover, the husband, received at sundry times, in right of his wife's share of the proceeds, $2191.52, and we think the appellee's claim to this amount, under the testimony in the cause, rests upon an equitable foundation, as will be more fully explained hereafter. But as to the amount received by the husband from the personal estate of her father, before the adoption of the Code, it must be governed by the law then existing, applicable to

such fund, and it is not subject to the same principles, which affect the proceeds of the real estate.

. The husband was entitled in his own right to receive it, and any promise or engagement he may have made to pay it to his wife, was a mere voluntary promise, without consideration, and can form no ground of claim, against him or his estate.

If he had been obliged to resort to a Court of equity to get possession of it, no doubt the Court would have required him to do equity, by making a fair settlement upon his wife.  *Duvall vs. Farmers' Bank,* 4 *G. & J.,* 282.

The sum received by the husband, on account of the distributive share of his wife, in her mother's personal estate, in February, 1870, amounting to $312.12, was the separate property of the wife under the provision of the Code, Art. 45, her mother having died intestate, in the year 1870. *Barton vs. Barton,* 32 *Md.,* 214.

All these sums aggregating $2880.44 received by the husband, were applied by him, it seems, in payment for the home farm of the appellee's father, which had been purchased by her husband, at the trustee's sale thereof, under a promise to his wife, before the purchase, that the money should be applied to that purpose, and treated as a loan to her husband.   That property was afterwards sold by the husband, who bought other lands, and becoming involved in debt in 1871, he conveyed all his property to his brother, in trust for the payment of his debts.

The claim of the wife as a creditor of her husband, has been exhibited against the fund, derived from the sale of the husband's property under the deed of trust, brought into Court for distribution amongst his creditors.   Exceptions being filed thereto, including the plea of limitations, they were overruled by the Circuit Court, and the whole claim was allowed.

The equitable nature of the claim upon the husband, and the wife having no remedy against him in a Court of

law ; neither limitation, nor lapse of time, certainly short of twenty years, could operate as a bar to the demand. *Bowie vs. Stonestreet,* 6 *Md.*, 418.

Although the real estate of the father, had been sold under the decree, and its mutation from real to personal, took place when the sale was ratified, and the purchaser had complied with the terms of sale, and the interest of the wife had then become a *chose in action,* with the right of survivorship to the wife, in case the husband made no appropriation of it to his own use ; *State vs. Krebs,* 6 *H. & J.,* 31 ; yet there is no doubt a Court of Equity, the proceeds being under its control, would upon the application of the husband and wife, have made equitable provision therefrom, for her benefit. Where the parties have not come into Court, if the husband has agreed to do what the Court would have directed, it ought to receive the sanction of the Court. The wife's equity will prevail against the assignment of the husband for valuable consideration, or in payment of a just debt. *Stevenson vs. Reigart,* 1 *Gill,* 27, referring to 5 *Johnson C. R.,* 484, and 6 *Johns. C. R.,* 178.

The wife may become the creditor of the husband ; *Buchanan vs. Deshon,* 1 *H. & G.,* 280 ; and as to the proceeds of the real estate of the appellee, the agreement of the husband with her and his promise, rest upon sufficient foundation and constituted her the creditor of her husband.

We have had occasion recently in the case of *Drury & Wife vs. Briscoe & Randall,* 42 *Md.,* 154, very similar to this, carefully to examine this question, and upon principle and authority, we think, in such case the wife must be treated as the creditor of her husband, in a Court of Equity.

There is no doubt that by the rules and policy of the common law, the husband and wife are considered for most purposes as one person, and have such unity of interest, as to render them incapable of contracting with each other ;

24                    v. 43.

differing from the provisions of the civil law, which treated them as two distinct persons. *Story's Eq. Juris.*, sec. 1367.

But the common law, whilst giving to the husband the enjoyment of the wife's property, upon the ground that it was obligatory upon him to maintain her, afforded no provision for her, in the event of his failure, or inability to perform that duty. *Story's Eq. Jurisp.*, sec. 1409.

For the purpose of securing to the wife, a reasonable support from her own property, which devolves upon the husband by the marriage, and for which the common law had made no adequate provision, the Courts of Equity have always been careful to extend their protection to the wife, in all cases brought within their cognizance, so as to afford the wife reasonable maintenance from such property. For many purposes Courts of Equity treat the husband and wife, as the civil law does, capable in a limited degree of contracting with each other, and of having separate interests. *Story's Eq. Juris.*, secs. 1318, 1372, 1377.

This policy governing Courts of Equity seems, says Judge STORY in his *Equity Jurisprudence*, sec. 1429, to have been founded in wisdom, sound morals, and in a delicate adaptation to the exigencies of a polished and advancing state of society. That policy so manifestly just, has always governed our Courts of Equity, and has been recognized and further extended by Constitutional provisions, and by the Legislature of the State from time to time. (See *Acts of* 1841, *ch.* 161, 1842, *ch.* 293, 1853, *ch.* 245, and 38*th sec. of Art.* 8, *of the Constitution of* 1851.)

Further provisions have been made by the Code, Art. 45.

That the relation of debtor and creditor may exist between husband and wife in equity, is now too well established to be questioned, and the principles and practice of our Courts of Equity, in regard to the rights of

the wife, rest upon a solid foundation of wisdom, and the most enlightened justice. The construction given to our statutory provisions, has been in full accordance with the policy indicated. Amongst others authorities, see *Buchanan vs. Deshon,* 1 *H. & G.,* 280; *Duvall vs. Farmers' Bank of Maryland,* 4 *G. & J.,* 282; *Stevenson vs. Reigart,* 1 *Gill,* 1; *Bowie vs. Stonestreet,* 6 *Md.,* 418; *Logan vs. McGill,* 8 *Md.,* 461; *Anderson vs. Tydings,* 8 *Md.,* 427; *Stockett vs. Holliday,* 9 *Md.,* 480; *Unger and Wife vs. Price,* 9 *Md.,* 552; *Schindell vs. Schindell,* 12 *Md.,* 108, 294; *Bridges & Woods vs. McKenna,* 14 *Md.,* 258; *Jones, Adm'r of Henry vs. Jones and Wife,* 18 *Md.,* 468; *Smith vs. McAtee,* 27 *Md.,* 420; *Mayfield vs. Kilgore,* 31 *Md.,* 240; *Barton vs. Barton,* 32 *Md.,* 214; *Rice vs Hoffman,* 35 *Md.,* 344.

The fact is undisputed, that the husband received in right of his wife the amount claimed by her.

The proof shows that he received the money with the agreement and understanding between him and his wife, that it was to be treated as a loan to be repaid by him, and which he promised to do.

There is no allegation that there were any subsisting creditors to be affected thereby. Neither by the common law, nor the provisions of the Statute of Elizabeth in regard to creditors, can any valid objection be interposed to the *bona fides* of the transaction.

No law compelled the husband to insist upon his marital rights, or denied him the power to make reasonable provision for his wife in the manner adopted.

It was a provident and just provision, and there was ample consideration for his promise to treat the funds, to the extent we have stated, as a loan to him, to be returned. The sum received from the proceeds of the real estate $2191.52 and the $312.12, from the personal estate of her mother, we think ought to be allowed her. Having received a support from her husband from the time of the

loan, she is not entitled to interest on the claim, except a due proportion of the interest received by the trustee from the sale. The order of the Circuit Court will be reversed, and the cause remanded, that the claim of the appellee may be allowed as indicated.

*Order reversed, and*
*cause remanded.*

(Decided 13th December, 1875.)