(Decided 9th December, 1880.)

BENJAMIN PERKINS and MARGARET R. PERKINS, his Wife *vs.* ELIZABETH A. EMORY.   DAVID CARROLL *vs.* ELIZABETH A. EMORY, and others.

*Apportionment of an Annuity charged on Real Estate by a Will—Costs.*

An annuity having been charged by will on several parcels of real estate devised to one person, the right of the annuitant to enforce the charge against any or all of the property devised, can be waived only by agreement on the part of the annuitant, and is in no manner affected by deeds, mortgages or transactions to which the annuitant was not a party.

Where a cause is remanded under Art. 5, sec. 28, of the Code, this Court makes no disposition of the costs, which are left to the order and direction of the Court below.

APPEALS from the Circuit Court for Queen Anne's County, in Equity.

By his last will and testament, (admitted to probate in Queen Anne's County in 1860,) William Emory devised to his daughter the appellant, Margaret R. Perkins, his house and lot in Chestertown, Kent County; also his dwelling house, store house and shop, and the lot of ground on which they were situate, in the town of Centreville, Queen Anne's county; also as much land laid off of

his "Newhold Farm," in last named county, as directed by said will, as would make her share of his real estate equal to that of his other children.    The part of the said farm so laid off to her, is that known as "Oakwood," and "Ann's Portion."

The testator, by his will, further directed that the appellee Elizabeth A. Emory, his wife, should receive from his real estate, one thousand dollars annually during her life, the same to be a lien upon his real estate, with right of distress for the same, and he did further will and direct, that each child's part of his real estate or land should be charged with the payment annually to his wife during her life, of $125.00 of said one thousand dollars.

The appellants, Perkins and wife did, by their deed, dated the 15th January, 1867, duly executed and recorded, for the consideration therein stated of $10,583.75, sell and convey that part of said real estate known as "Oakwood" and "Ann's Portion," unto one William B. Realey; and the deed, after describing said land by metes and bounds, courses and distances as containing 264 acres, 2 roods and 15 perches, is as follows: "and being the same land which was devised to the said Margaret R. Perkins, by her father, William Emory, by his last will and testament—reserving and excepting an annual rent charge to Elizabeth A. Emory, widow of the aforesaid William Emory, for, and during her natural life, unless the said rent charge shall be sooner released, of the annual sum of one hundred and twenty-five dollars."

To secure the balance of unpaid purchase money of $7000 and interest, Realey and wife on the 1st February, 1867, executed and delivered to Margaret R. Perkins a mortgage of said land, which mortgage Perkins and wife released, and agreed that Realey and wife should execute a first mortgage of said premises to the appellant, one David Carroll, to secure $5000.00; which mortgage was duly executed on the 9th November, 1867, and also a

second mortgage on the same day, to Margaret R. Perkins for $2084.00 and interest. The last mortgage has a recital as to Mrs. Emory's rent charge, which is contained in the Court's opinion.

The annual charge in favor of Mrs. Emory being largely in arrear, she, on the 15th July, 1873, filed her bill of complaint against the appellants, Perkins and wife and Carroll, and William B. Realey, charging the foregoing facts and praying to have the 264 acres, 2 roods and 15 perches, or so much thereof as might be necessary, sold for the payment of the arrears and interest.

The bill was answered by Perkins and wife, admitting the charges in the bill and consenting to a decree for the sale of the real estate as prayed, and by Carroll, who among other things, admitted that the land of the "Newhold Tract," laid off to Mrs. Perkins, was by her and her husband, conveyed to Realey by deed, as stated in the bill, subject to the lien and charge of the complainant for her annuity of $125.00, under the provisions of the will, and while admitting that the same was so charged, he alleged that the other property devised to said Margaret, the property in Chestertown and Centreville, was also bound for the payment of the annuity, and claiming that he was entitled to have the same apportioned between said properties. On the 16th July, 1877, the following agreement was filed, marked "Exhibit B," and signed by the solicitors of the respective parties:

"It is hereby agreed, by and on behalf of the parties to this cause, that a statement of the complainant's claim, showing the amount due and in arrear thereon up to the 1st January, 1877, after allowing and deducting all credits and discounts verified by the oath of B. B. Perkins, and certificate of W. J. Gibson, shall be accepted and filed as evidence in this cause; that the defendant, David Carroll, sold under a mortgage from the defendants, Perkins and wife, the house and lot mentioned in the complain-

ant's bill located in Chestertown, on the 2nd July, 1872, at and for the sum of $1760, which is admitted to be the full value thereof, and which, after deducting the expenses of sale, distributed to said mortgage as of the day of sale, the net sum of $1528.99, received by the said Carroll, and a proper credit upon the mortgage from the defendant, William B. Realey, to the said Carroll, mentioned in these proceedings; that the defendant, Margaret R. Perkins, claims now to be, and has continued since the death of her father, the owner, under her father's will, of the dwelling house, store house and shop, and lot of ground in Centreville, mentioned in the complainant's bill, and that the full value thereof shall be regarded to be for the purposes of this agreement, the sum of $1700. That the answer of David Carroll, filed on the 11th November, 1873, shall be regarded and accepted as the answer of the defendant, W. B. Realey, also to the complainant's bill; that a decree shall forthwith pass for the sale of the land mentioned in the complainant's bill as the land conveyed by the said Perkins and wife to the said Realey, and that the proceeds of said sale shall be distributed in this cause under the order and direction of this Court, and that said proceeds of sale shall be liable for whatever amount or proportion of the complainant's claim this Court shall apportion to the land conveyed to Realey, and to the house and lot in Chestertown, sold under the mortgage to Carroll, and that the net balance of said proceeds of sale, and the residue of said purchase money, if any, shall be allowed to the said Carroll, on account of his mortgage claim, to the extent thereof, and the dwelling house, store house and shop, and lot of ground in Centreville, mentioned in the complainant's bill, shall be subject to the further order and decree of this Court in the premises.    It is further agreed, that the exhibit filed with the complainant's bill, (the will of William Emory) shall be accepted and regarded as evidence in this cause."

And on the same day a decree was passed for the sale of the land, known as "Oakwood" and "Ann's Portion."

The land was sold, and the proceeds of sale were brought into Court for distribution.

The Auditor stated two accounts: In "Account No. 1," after allowing expenses and costs, he allowed the whole of the accrued charge to Mrs. Elizabeth A. Emory, and the balance of sales being insufficient, annually, to produce at six per cent., an amount equal to the annual charge, reported the balance for the future order of the Court; and in "Account No. 2," after allowing expenses and costs, he apportioned said accrued charges among the three parcels of property, allowed to Mrs. Emory those which should be charged to the Chestertown property and the "Oakwood" and "Ann's Portion" property respectively, and having capitalized so much of said annual charge as he deemed chargeable to said two pieces of property, allowed the same to Mrs. Emory, and the balance of sales to Carroll on his mortgage debt.   Carroll excepted to Account No. 1, and Mrs. Emory, and Perkins and wife, excepted to Account No. 2.

On the 2nd April, 1879, the Court, WICKES, J., filed the following opinion:

"The late William Emory, by his will, bequeathed to the complainant an annuity of one thousand dollars during her life, which he charged upon the real estate devised to his children.   A portion of this annuity, namely, the sum of one hundred and twenty-five dollars, is expressly charged by the testator upon the real estate devised to Mrs. Margaret R. Perkins, one of the defendants.   A part of the property which Mrs. Perkins conveyed to William B. Realey, has been sold under the decree in this case, and the question presented is, whether the whole amount due to Mrs. Emory, on account of her annuity, which has been in arrear for several years, shall be paid out of this fund, and the residue invested to meet the future accruing

annuity, or whether the proceeds of sale shall only bear
a proportionate part of the burden.

"Mrs. Emory was not a party to the deed from Perkins
and wife to William B. Realey, or to the mortgages exe-
cuted by Realey to David Carroll and to Mrs. Perkins,
and she cannot, therefore, be bound by any stipulations
contained in these deeds which relate to her annuity, or
which seek to modify in any manner her rights derived
from the will of her husband.

"But we understand from the agreement filed in the case,
marked "Exhibit B," that Mrs. Emory waives this excep-
tion, and to avoid future litigation, is willing that the
Court, in deciding this case, shall consider the equities
existing between David Carroll and Mrs. Perkins, and
their conflicting claims in reference to the payment of her
annuity. It is contended, that in the deed from Perkins
and wife to Realey, executed on the 15th of January, 1867,
there is an express agreement that Realey shall pay the
whole of the annuity charged on the land devised to Mrs.
Perkins, and that the mortgage from Realey to Carroll
being subsequent to the deed, was taken subject to that
claim. This construction of the contract between the
parties cannot, in our opinion, be sustained. After de-
scribing the property conveyed, by metes and bounds, and
as 'being the same land which was devised to the said
Margaret R. Perkins by her father, William Emory,'
the deed has the following clause: 'Reserving and ex-
cepting an annual rent charge to Elizabeth Emory, during
her natural life, of the annual sum of one hundred and
twenty-five dollars.' Had these words been omitted, the
charge would still have rested upon the land. By insert-
ing them in the deed, it was not intended to create a new
obligation, having no existence without them, but they
were merely descriptive of the existing condition of the
property, which Mrs. Perkins conveyed to Realey. They
are not words of agreement, but only describe the obliga-

tion to which Realey would be liable to Mrs. Emory. (*Wake vs. Barroll and Spence*, 8 *Gill*, 288.)

"But assuming that the deed imposed upon Realey the obligation to pay the whole of the annuity, it was an agreement which the parties thereto could at any time modify or annul. The first mortgage from Realey to Mrs. Perkins, to secure the purchase money of the farm, was executed February 1st, 1867. On November 5th, 1867, a release of that mortgage was executed, in which release it is recited, that for the *convenience* of *Mrs.* Perkins, Realey had agreed to divide the debt and to execute two mortgages in lieu of the first. On the 9th of November, 1867, a few days thereafter, the mortgage to Carroll for $5000, was executed by Realey, in which it is stated, that it was for a part of the purchase money of the land. On the same day, another mortgage was executed by Realey to Mrs. Perkins, to secure the payment of $2084, the balance of the purchase money, which was not *recorded* for some weeks *after* the mortgage to Carroll. The whole transaction shows that the change in the securities, was made for the accomodation of Mrs. Perkins, who, it is reasonable to suppose, received the $5000 advanced by Carroll. Under these circumstances, we think it was the intention of the parties to these deeds, to secure as far as they were able, the payment of $5000 to Carroll, in preference to any claim which Mrs. Perkins had on the farm, and not to throw the whole burden of the annuity on the farm, and thereby to entirely relieve the Centreville property.

"By the agreement to which we have referred, the purchase money of the farm is to bear not only the proportion of the complainant's claim for the arrears of her annuity properly chargeable on the farm, but also that portion with which the property in Chestertown is chargeable, as Mr. Carroll has heretofore received the whole of the net proceeds of sale of that property; and the balance of the proceeds, or so much thereof as may be necessary, is

to be charged with the same proportion of the annuity as it may hereafter become due.  For these reasons we are of opinion that the complainant's claim for her annuity now in arrear, with interest, should be paid by the respective portions of property, in the proportion of their relative values, and that her future annuity should be paid in the same manner.

"It was the manifest intention of the testator to secure to his widow an annual sum during her life for her support, and the defendants have no right to require her to accept a gross sum in satisfaction of this provision.  Her claim is paramount to the interest of the defendants, and it is proper that the annuity should be secured to her. Being a charge on the land, the money realized from a sale of the property should be made to furnish the same security.  This can be done by directing so much of the proceeds of the sale to be invested, as will be necessary to raise the portion of the annuity with which the fund should be charged; the principal, at the death of Mrs. Emory, being payable to the party entitled thereto. (*Buchanan vs. Deshon,* 1 *H. & J.,* 280; *Payton vs. Ayers,* 2 *Md. Chy. Dec.,* 64.)

"Understanding the agreement of the parties, as we have stated, we have forborne to express any opinion as to Mrs. Emory's right, had that agreement not been made, to have the whole of her claim paid out of the fund now in the hands of the trustee.

"We will, therefore, sign an order sustaining the exceptions to both of the auditor's accounts, and referring the case to him, with instructions, to state an account in conformity with these views."

Whereupon under the order of Court, (WICKES and STUMP, J.,) the auditor stated an account (filed the 23rd April, 1879,) in accordance with the views expressed in the foregoing opinion.  It was excepted to by the appellants Perkins and wife, but was ratified by the Court by

its order of the 15th May, 1879. From these orders, Perkins and wife and David Carroll respectively appealed.

The cause was submitted to BARTOL, C. J., BOWIE, MILLER, ALVEY, ROBINSON and IRVING, J.

*J. B.* and *E. H. Brown,* for the appellants, Benjamin Perkins and Margaret R., his wife.

*D. C. H. Emory,* for the appellant, David Carroll.

*Thos. J.* and *B. P. Keating,* for the appellee, Elizabeth A. Emory.

BARTOL, C. J., delivered the opinion of the Court.

By the last will of the late William Emory the husband of the appellee, the *three* pieces of property devised to the appellant Mrs. Perkins, who was the testator's daughter, were charged with the payment of $125 *per annum* to Mrs. Emory. The annuitant not having been a party to the deed from Perkins and wife to William R. Realey, or to the mortgage from Realey to Carroll, her rights were in no manner affected thereby; but she was entitled notwithstanding those transactions, to enforce her charge against any or all of the property devised to Mrs. Perkins. It appears however from the proceedings that she has agreed, the payment of the arrears of her annuity, and of amounts payable to her in the future, may be enforced against the several parcels of property in their just and equitable proportions, in such manner as may be conformable to the equitable rights of Perkins and wife and Carroll, growing out of the transactions between those parties. This we understand to be the substance and effect of the agreement "Exhibit B," contained in the record.

If the deed from Perkins and wife to Realey stood alone, we should be inclined to construe it as intending to subject

the land thereby conveyed, to the payment of the whole of Mrs. Emory's annuity, to the exoneration of the Chestertown and Centreville property; and as a consequence the mortgage of Carroll would be subject to the same burden. But conceding that such would be the true construction of the deed, it is very clear that this arrangement was modified by the subsequent transactions between the parties.

It appears that on the 1st day of February, 1867, a few days after the deed, Realey executed a mortgage of the land in favor of Mrs. Perkins, to secure the payment of $7000, and interest, being for the purchase money of the land. Afterwards, on the 9th day of November 1867, Perkins and wife having released the mortgage of Realey, the latter executed a mortgage of the same land to David Carroll for $5000, which as therein recited, it was agreed should be a *first mortgage* of the land; and on the same day Realey executed a *second* mortgage of the same property in favor of Mrs. Perkins, to secure the payment of $2084, the balance of purchase money due by him. In the last-mentioned mortgage it is recited: "whereas Elizabeth Emory, widow of William Emory, late of Queen Anne's County aforesaid, deceased, has an annual rent-charge upon the land and premises above described, of the sum of one hundred and twenty-five dollars; it is further provided that the said William B. Realey may at his option, defer the payment of the said sum of $2084, for and during the natural life of the said Elizabeth Emory, unless the rent-charge shall be sooner released; the said William B. Realey paying the interest thereof to the said Elizabeth Emory, and charging the same against any interest due the said Margaret R. Perkins, anything herein contained to the contrary notwithstanding. But it is expressly hereby provided, that if the said Elizabeth Emory shall at any time release the rent-charge aforesaid, that then the said last mentioned proviso shall be void and of no force or virtue in law."

It is obvious that the intent of the parties in these transactions, as far as they were able to do so, was to give to *Carroll* a *first* mortgage upon the property free and clear from the charge of Mrs. Emory's annuity, and to transfer the charge from the land, to the balance of purchase money due from Realey. So far as the claim of Mrs. Emory is concerned, her right to subject the property to the charge of her annuity was not impaired or affected, she being no party to the transaction. But as between Mrs. Perkins and Carroll the mortgagee, there is no equitable ground upon which the former can claim that the whole burden of the annuity shall rest upon the farm; and that her property in Centreville shall be exonerated. As between Mrs. Perkins and Carroll, his mortgage is entitled to be exempted from the charge of the annuity, so far as the property of Mrs. Perkins in Centreville may suffice for that purpose.

It appears that Carroll held also a mortgage of Mrs. Perkins' property in Chestertown, as a security for the $5000, due him, from which he received the sum of $1528.99. It was proper therefore for the auditor, under the agreement " *Exhibit B*," to charge the proceeds of the farm with the proportion of the annuity, chargeable upon the Chestertown property, before allowing for the payment of Carroll's mortgage. To this part of the auditor's account of April 23rd 1879, ratified by the Circuit Court, the appellant makes no objection. We think there was no error in the decision of the Circuit Court, or in the principles upon which the auditor's account of April 23rd was stated—whereby the sum payable on account of the annuity in arrear, was apportioned ratably between the three parcels of property devised to Mrs. Perkins;—charging upon the proceeds of the land sold the proportion chargeable thereon, and on the Chestertown property, and leaving the property in Centreville still liable for its ratable proportion, according to the ageement of the parties.

The annuity being given to Mrs. Emory during her life, she is entitled to have the same secured to her, by setting apart a sufficient sum to be invested, so as to yield in accruing interest the amount of her annuity. *Buchanan vs. Deshon*, 1 *H. & G.*, 280, 298.

There is nothing in the agreement "*Exhibit B*," by which she has waived this right, or consented to receive in lieu of her annuity a gross sum regulated according to her age and health, in accordance with the chancery rule which prevails in cases of dower. On this question we concur in the decision of the Circuit Court, and the auditor's report stated in conformity thereto is in this respect correct.

We find however that in ascertaining the proportion of the arrears of the annuity chargeable on the Chestertown property and the farm, the auditor has committed an error. In the audit of April 23rd, he states this to be $810.61. We find by a careful calculation, that the correct amount is $778,—leaving $311.84 as the proportion chargeable on the Chestertown property.

But the order of the Circuit Court cannot be reversed on account of this error; it not having been made a matter of exception to the auditor's statement. It is proper however that the error should be corrected; and to that end, as also to enable the appellee to enforce her claim against the property of Mrs. Perkins in Centreville, the cause will be remanded to the Circuit Court, under Article 5, section 28, of Code. In such case no disposition of the costs is made in this Court, but the same is left to the order and direction of the Circuit Court. *Doub vs. Mason*, 5 *Md.*, 613, (*Appendix.*)

*Cause remanded.*

(Decided 9th December, 1880.)